David T. Gibbons, J.
By Indictment No. 32729 dated October 18, 1971, the defendant was charged with criminal possession of a forged instrument in the second degree under the first and second counts, and with loitering under the third count.
The defendant now moves for an order (1) to inspect the Grand Jury minutes, or in the alternative, for an order dismissing the said indictment; (2) challenging the validity of the third count, upon the ground that the loitering statute, subdivision 6 of section 240.35 of the Penal Law, is unconstitutional; and (3) for a search and seizure hearing to suppress from evidence herein certain property, including, but not limited to, certain checks mentioned in the indictment alleged to have been seized by the police in violation of the defendant’s constitutional rights. (OPL art. 710).
With respect to defendant’s motion for leave to inspect the Grand Jury minutes, or in the alternative, to dismiss the indictment herein upon the ground that the evidence before the Grand Jury was not legally sufficient to establish the offenses charged in the indictment, or any lesser included offenses (OPL 210.20, subd. 1, par. [b]), the court finds, after reading the Grand Jury minutes, that the evidence presented is sufficient to sustain the first and second counts of the indictment herein.
Inasmuch as the defendant now challenges the constitutionality of subdivision 6 of section 240.35 of the Penal Law, the validity of the third count of the indictment charging the defendant with loitering, will now be separately considered.
The defendant is charged in the third count of the indictment with the crime of loitering, as follows: “ The defendant, thomas J. bambino, on or about the 13th day of August, 1971, in the County of Nassau, State of New York, did loiter, remain in and about a place without apparent reason and under circumstances which justified suspicion that he may be engaged or about to engage in crime and upon inquiry by a peace officer, the defendant refused to identify himself, to wit: said defendant was observed by a peace officer removing a paper which obscured the license plates of his 1969 Chevrolet automobile bearing registration number 3978MZ ”.
The loitering statute (Penal Law, § 240.35, subd. 6) upon which the foregoing third count of the indictment is based, reads as follows: A person is guilty of loitering when he: “ 6. Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or *389 fails to give a reasonably credible account of Ms conduct and purposes ”.
The source of subdivision 6 of section 240.35 of the Penal Law is section 250.6 of the Model Penal Code of the American Law Institute. It was included within the revised Penal Law wMch became effective in 1967, and since that time its constitutionality has been the subject matter of considerable judicial attention.
This statute was held unconstitutional in People v. Beltrand (63 Misc 2d 1041) and People v. Villaneuva (65 Misc 2d 484). It was held constitutional in People v. Strauss (66 Misc 2d 268) and People v. Taggart (66 Misc 2d 344).
In People v. Schanbarger (24 N Y 2d 288, 291 [1969]) the Court of Appeals held it to be unnecessary to pass upon the constitutional question presented in a case where it reversed a conviction for loitering under this statute and dismissed the information because of a substantive deficiency in pleading and proving one of the required “ conjunctive ” elements, “that the circumstances were such that the trooper was justified in suspecting that the defendant might be engaged or was about to engage in crime ”.
Similarly, in affirming the dismissal of the charge of loitering in the above-mentioned People v. Beltrand (supra), the Appellate Term, First Department, in 67 Misc 2d 324 (1971) relying upon the authority of People v. Schanbarger (supra), declined to pass on the constitutionality of tMs statute, with the following holding: “ There was no proof, on the preliminary hearing, of loitering by defendant for any appreciable period of time. Hence, the testimony was insufficient factually to establish the conjunctive elements of subdivision 6 of section 240.35 of the Penal Law. It is therefore unnecessary to deal with defendant’s argument that the statute is unconstitutional (People v. Schanbarger, 24 N Y 2d 288; Rescue Army v. Municipal Ct., 331 U. S. 549, 569).”
Against this background of uncertainty in relation to the constitutional validity of tMs statute due to the several divided opinions of the courts, the defendant herein, by this motion, attacks the loitering count of this indictment by challenging the constitutionality of subdivision 6 of section 240.35.
The court approaches the determination of this question with a full awareness that, under People v. Pagnotta (25 N Y 2d 333, 337 [1969]), “ There is a strong presumption that a statute duly enacted by the Legislature is constitutional ”, and “that in order to declare a law unconstitutional, the invalidity of the law *390 must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40.) ” (See, also, McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.)
In viewing this matter, the court finds at the outset, that subdivision 6 of section 240.35 of the Penal Law is adequately pleaded in the indictment, and, further, an examination of the Grand Jury minutes reveals sufficient evidence to support the loitering allegation of this indictment.
Thus, the court is now squarely confronted with the constitutional question which is of substantive proportions, going directly to the heart of the matter herein. If the statute is valid, the motion must be denied. If it is deficient in complying with constitutional standards, it is as if the facts alleged in the loitering count constitute no crime under subdivision 6 of section 240.35 of the Penal Law.
Consideration must now be given to the legal impact upon the subject statute by the principle of law expressed by the Supreme Court of the United States in Papachristou v. City of Jacksonville (405 U. S. 156), in which by a unanimous Bench in an appeal involving five consolidated cases, the Jacksonville, Florida, vagrancy ordinance was struck down as unconstitutional.
To determine this question it would be useful at the outset to consider the structure and composition of the enactment now under constitutional attack.
Subdivision 6 of section 240.35 of the Penal Law was characterized by the Court of Appeals in People v. Schanbarger (24 N Y 2d 288, 291, supra) to be composed of several “ clauses which are conjunctive, rather than disjunctive ’ ’, and under the scheme of its enactment, ‘ ‘ in order to sustain a conviction under it, each of the conjunctive elements must be proved beyond a reasonable doubt ” (italics supplied).
An examination of the statute reveals that it was structured to embrace the following components.
The first element required to be established is that the defendant “loiters, remains or wanders in or about a place without apparent reason ”.
The second requirement of the statute is that the foregoing “ loitering ” activity of the first element be committed “ under circumstances which justify suspicion that he may be engaged or about to engage in crime
The third element mentioned is that the defendant ‘ ‘ upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes ”.
*391 When measured against the constitutional standards established by the Supreme Court in Papachristou, the question presented is how do the above-mentioned “ conjunctive elements ” of this statute score?
Comparable to the language of the first conjunctive element of subdivision 6 of section 240.35 of the Penal Law, which provides, “ Loiters, remains or wanders in or about a place without apparent reason ”, the Jacksonville ordinance, after listing those against whom it is directed, states: ‘ ‘ Persons wandering or strolling around from place to place without any lawful purpose or object ”,
The latter phraseology of the Jacksonville ordinance was stricken down in Papachristou as in violation of the Fourteenth due process of law Amendment of the "United States Constitution, because of vagueness and not sufficiently clear and positive as to give an unequivocal warning to the citizen of the rule which is to be obeyed.
Referring to this portion of the Jacksonville ordinance, Justice Douglas, writing for the Supreme Court in Papachristou held (pp. 162-163):
‘ ‘ This ordinance is void for vagueness, both in the sense that it ‘ fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute/ United States v. Harriss, 347 U. S. 612, 617, and because it encourages arbitrary and erratic arrests and convictions. Thornhill v. Alabama, 310 U. S. 88; Herndon v. Lowry, 301 U. S. 242.
“ Living under a rule of law entails various suppositions, one of which is that ‘ [all persons] are entitled to be informed as to what the State commands or forbids Lanzetta v. New Jersey, 306 U. S. 451, 453.
“ Lametta is one of a well-recognized group of cases insisting that the law give fair notice of the offending conduct. See Connally v. General Construction Co., 269 U. S. 385, 391; Cline v. Frink Dairy Co., 274 U. S. 445; United States v. Cohen Grocery Co., 255 U. S. 81. In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed. Boyce Motor Lines, Inc. v. United States, 342 U. S. 337; United States v. National Dairy Products Corp., 372 U. S. 29; United States v. Petrillo, 332 U. S. 1.
‘ ‘ The poor among us, the minorities, the average householder are not in business and not alerted to the regulatory schemes of vagrancy laws; and we assume they would have no understanding of their meaning and impact if they read them. Nor are they protected from being caught in the vagrancy net by *392 the necessity of having a specific intent to commit an unlawful act. See Screws v. United States, 325 U. S. 91; Boyce Motor Lines, Inc. v. United States, supra.
‘ ‘ The Jacksonville ordinance makes criminal activities which by modem standards are normally innocent ’ \
In People v. Diaz (41 N Y 2d 469) the Court of Appeals struck down as unconstitutional a loitering ordinance of the City of Dunkirk, which in language similar to the ordinance in Papachristou, proscribed that, ‘ ‘ No person shall lounge or loiter about any street or street corner in the City of Dunkirk ”.
The court, on page 470, evaluated the lack of clarity of the foregoing language of the ordinance as follows: “ It is the rule that for validity a criminal statute must be informative on its face (People v. Firth, 3 N Y 2d 472) and so explicit that ‘ all men subject to their penalties may know what acts it is their duty to avoid ’ (United States v. Brewer, 139 U. S. 278, 288; People v. Vetri, 309 N. Y. 401). While the term ‘ loiter ’ or 1 loitering ’ has by long usage acquired a common and accepted meaning (People v. Bell, 306 N. Y. 110), it does not follow that by itself, and without inore, such term is enough to inform a citizen of its, criminal implications and, by the same token, leave it open to arbitrary enforcement ” and the court pointed out (p. 471) that a loitering statute can be valid only if it contains such degree of specificity as “to point up the prohibited act, either actual or threatened ”.
People v. Merolla (9 N Y 2d 62, 66) provides an example of a statute held valid because the forbidden act of loitering was specifically directed against an instrusion upon any “ ‘ vessel, dock, wharf, pier, bulkhead, terminal, warehouse, or other waterfront facility or within five hundred feet thereof in that portion of the Port of New York district within the state of New York ’ ”.
In People v. Johnson (6 N Y 2d 549, 552) the proscribed act of loitering was specifically directed against such conduct upon public school buildings and grounds which were characterized in that decision as being premises of a “ restricted public nature ”. For the same reason, loitering “ about ” railroad or subway facilities was held to be constitutional in People v. Bell (306 N. Y. 110, 113, 116-117).
In striking down a Cincinnati, Ohio, ordinance couched in general terms to make it a criminal offense for ‘1 three or more persons to assemble * * * on.any of the sidewalks * * * and then conduct themselves in a manner annoying to persons passing by ”, the Supreme Court of the United States in Coates v. City of Cincinnati (402 U. S. 611, 614 [1971]) *393 expressed the need for specificity as follows: “It is said that the ordinance is broad enough to encompass many types of conduct clearly within the city’s constitutional power to prohibit. And so, indeed, it is. The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of anti-social conduct. It can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. Gregory v. Chicago, 394 U. S. 111, 118, 124-125 (Black, J., concurring). It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed ”.
Here, insofar as this statute (Penal Law, § 240.35, subd. 6) purported to make it a criminal act to loiter “in or about a place without apparent reason ”, the aforesaid first conjunctive element is, as above demonstrated, both an unreasonable interference upon an individual’s right of movement, Shuttlesworth v. Birmingham (382 U. S. 87); Coates v. City of Cincinnati (supra), and is so vague, inadequate and uncertain as to render this statute unconstitutional on its face.
Turning next to a consideration of the second conjunctive element of subdivision 6 of section 240.35 of the Penal Law to the effect that an individual may be arrested for the crime of so loitering, 11 under circumstances which justify suspicion that he may be engaged or about to engage in crime ”, the Supreme Court in Papachristou also directed its attention to another aspect of the vagueness of the Jacksonville ordinance in relation to its failure to provide a standard of criminality by improperly allowing an arrest to be made at the discretion of the police.
In rejecting the concept of an arrest based only upon a policeman’s suspicion, the Supreme Court in Papachristou made the following comment (pp. 168-171): “ Another aspect of the ordinance’s vagueness appears when we focus, not on the lack of notice given a potential offender, but on the effect of the unfettered discretion it places in the hands of the Jacksonville police. Caleb Foote, an early student of this subject, has called the vagrancy-type law as offering ‘ punishment by analogy ’. Id., at 609. Such crimes, though long common in Russia, are not compatible with our constitutional system. We allow our police to make arrests only on ‘ probable cause ’, a Fourth and Fourteenth Amendment standard applicable to the States as well as to the Federal Government. Arresting a person on suspicion, like arresting a person for investigation, is foreign to our system, *394 even when the arrest is for past criminality. Future criminality, however, is the common justification for the presence of vagrancy statutes. See Foote, supra, at 625. Florida has, indeed, construed her vagrancy statute ‘ as necessary regulations ’ inter alia, ‘ to deter vagabondage and prevent crimes ’. Johnson v. State, 202 So. 2d 852; Smith v. State, 239 So. 2d 250, 251.
‘ ‘ A direction by a legislature to the police to arrest all ‘ suspicious ’ persons would not pass constitutional muster. A vagrancy prosecution may be merely the cloak for a conviction which could not be obtained on the real but undisclosed grounds for the arrest. People v. Moss, 309 N. Y. 429. * * *
‘ ‘ Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for ‘ harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit théir displeasure.’ Thornhill v. Alabama, 310 U. S. 88, 97-98. * # * The implicit presumption in these generalized vagrancy standards — that crime is being nipped in the bud — is too extravagant to deserve extended treatment ’ ’.
It is axiomatic under our law that an arrest in order to pass constitutional muster, must be founded upon probable cause, as that term is defined in Brinegar v. United States (338 U. S. 160, 175-176) as follows: “Probable cause exists where ‘the facts and circumstances within their [the officers’] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that’ an offense has been or is being committed”. (See, also, Beck v. Ohio, 379 U. S. 89, 91.)
The instant statute is defective because it makes the subjective thinking of the policeman the sole standard in determining whether the crime is committed. The vice lies in allowing the policeman’s suspicion that the defendant “ may be engaged or about to engage in crime ”, to be the determinant of the existence of criminality. This state of the policeman’s mind, in the absence of probable cause, is merely a surmise or an opinion based on nothing more than a guess or a whim; and when it comes to whether the individual is “ about to engage in crime ”, it demands the clairvoyance of a seer.
The right of a law enforcement officer to stop an individual in a public place to investigate and search for weapons “when he reasonably suspects that such person is committing, has committed, or is about to commit either (a) a felony, or (b) a Class A *395 Misdemeanor”, as provided by OPL 140.50 (snbds. 1, 2) is a deeply rooted long existing concept of the common law. (People v. Rivera, 14 N Y 2d 441, cert. den. 379 U. S. 978; People v. Peters, 18 N Y 2d 238, affd. 392 U. S. 40; People v. Rosemond, 26 N Y 2d 101.)
This right, however, to detain and investigate on suspicion does not, under any circumstances, and cannot, within recognized constitutional controls, ever justify an arrest on suspicion as this statute attempts to allow.
With respect to the third and last element in the make-up of subdivision 6 of section 240.35 of the Penal Law, in relation to an individual’s refusal “to identify himself or fails to give a reasonably credible account of his conduct and purposes ” upon inquiry by a police officer, it has been held that this is not a substantive element of the crime.
In People v. Merolla (9 N Y 2d 62, 68) the court held with respect to similar language, as follows: “ In construing the virtually identical phrase contained in the railroad loitering statute, namely, 6 who is unable to give satisfactory explanation of Ms presence ’, we held that it served to restrict the scope of the statute to the advantage of the accused, and its effect was to impose but a procedural condition rather than add a substantive element to the offense (306 N. Y. at p. 115).”
In People v. Schanbarger (24 N Y 2d 288, 291-292, supra), the court declared that a defendant’s failure or refusal to answer the peace officer’s “ inqMry ” under the loitering statute now under consideration, is not of substantive consequence, as follows: “ While it may be true that there was no reason why the defendant should not have answered the trooper’s questions, it equally is true that Ms failure to answer cannot constitute a criminal act and, particularly, a violation of subdivision 6 of section 240.35 ”.
For the reasons hereinabove set forth, it is the determination of this court that subdivision 6 of section 240.35 of the Penal Law is unconstitutional.
Accordingly, the third count of the indictment herein charging the defendant with loitering under said statute, is hereby dismissed.
The tMrd phase of the defendant’s motion to suppress from evidence certain property, including, but not limited to, certain checks mentioned in the indictment alleged to have been seized by the police in violation of the defendant’s constitutional rights, is hereby granted to the extent that a search and seizure hearing will be conducted pursuant to CPL 710.10, by the Trial Judge immediately prior to the trial herein.