Burke, J.
On this appeal brought on constitutional grounds, we are called upon to determine the validity of section 240.35 *569 (subd. 6) of the New York Penal Law.[1] Thus, the court is confronted with constitutional questions which go directly to the core of the matter herein. If the statute is constitutional, the evidence is sufficient to sustain the conviction.
Truly aware of the rule stated in People v. Pagnotta (25 N Y 2d 333, 337 [1969]) —that “ There is a strong presumption that a statute duly enacted by the Legislature is constitutional ” and ‘ ‘ that in order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40.) ”, we find that the statute represents another violation of due process of law because it is not clear and positive as to give an unequivocal warning to the citizen of the rule which is to be obeyed.
It is a principle of due process, the Supreme Court declared in Papachristou v. City of Jacksonville (405 U. S. 156,162), that a penal law is void for vagueness when it “ ‘ fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden * @ ’ United States v. Harriss, 347 U. S. 612, 617 ”. Moreover, as this court wrote in People v. Dias (4 N Y 2d 469, 470), “ It is the rule that for validity a criminal statute must be informative on its face (People v. Firth, 3 NY 2d 472) and so explicit that ‘ all men subject to their penalties may Imow what acts it is their duty to avoid ’ (United States v. Brewer, 139 U. S. 278, 288; People v. Vetri, 309 N. Y. 401).” (See, particularly, People v. Bambino, 69 Misc 2d 387.)
The statute in the case before us is not informative on its face and utterly fails to give adequate notice of the behavior it forbids. The statute contains two substantive elements(1) loitering “in or about a place without apparent reason ”, (2) under circumstances which ‘ ‘ justify suspicion ’ ’ that a person ‘ ‘ may be engaged or about to engage in crime ”.[2] ***Certainly, in light *570 of our decision in People v. Diaz (4 N Y 2d 469, 470, supra) in which we held unconstitutionally vague an ordinance penalizing lounging or loitering “ about any * * * street corner in * * * Dunkirk ”—the first element standing alone could not possibly be held to give sufficient notice of the conduct proscribed. The second element — that the loitering be done under circumstances which justify suspicion that a person is engaged in or about to engage in crime—is similarly obscure. Assuredly, there are no commonly understood set of suspicious circumstances of which all citizens are aware and to which applicability of the statute is restricted. In other words, this additional language does not condemn any identifiable act or omission or restrict the operation of the statute to a particular place or a clearly defined set of circumstances but, rather, it merely indicates that a person may be held for loitering if suspicion of criminality happens to be created in the mind of the arresting officer. In short, as we declared in the Diaz case (4 N Y 2d, at p. 471), the statute fails not only “ to point up the prohibited act, either actual or threatened ’ ’ but to advise the citizen in sufficiently clear and unambiguous terms of the distinction between “ conduct calculated to harm and that which is essentially innocent.”
The loitering statutes which we have upheld against attack on the ground of vagueness are altogether different from the sort of provision here challenged. (See, e.g., People v. Pagnotta, 25 N Y 2d 333, supra; People v. Merolla, 9 N Y 2d 62; People v. Johnson, 6 N Y 2d 549; People v. Bell, 306 N. Y. 110.) In each of the cited decisions, the statutes before the court were sustained either because they clearly “ point [ed] up” the prohibited act (e.g., People v. Diaz, 4 N Y 2d 469, 471, supra; People v. Pagnotta, 25 N Y 2d 333, supra) or else restricted loitering only at specific facilities where the likelihood of illegal activity was notorious (e.g., People v. Merolla, 9 N Y 2d 62, supra; People v. Johnson, 6 N Y 2d 549, supra; People v. Bell, 306 N. Y. 110, supra). For instance, in Pagnotta (25 N Y 2d 333, 338, supra), we sustained a provision of the former *571 Penal Law making it illegal to loiter about any “ stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drug”. And, in the Merolla case (9 N Y 2d 62, 66, supra), we held valid a provision of the Waterfront Commission Act which forbade loitering “upon any vessel, dock, wharf, pier, bulkhead, terminal, warehouse, or other waterfront facility ’ ’. The statute involved in Merolla (9 N Y 2d, at pp. 66-68), we observed in that case, dealt with loitering at “ specific facilities ” which were notorious for “ the evils which * * * pervaded the area ’ ’. Quite obviously, such specificity of the prohibited conduct is totally lacking in the statute before us.
Not only is subdivision 6 of section 240.35 of the Penal Law unconstitutionally vague for the reason that it fails to give adequate notice of the conduct to be avoided and punished but also because it places virtually unfettered discretion in the hands of the police and thereby encourages arbitrary and discriminatory enforcement. (See, e.g., Papachristou v. City of Jacksonville, 405 U. S. 156,168-171, supra; see, also, Amsterdam, Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the Like, 3 Crim. L. Bull. 205, 220-224.) More specifically, the provision in question, containing as it does absolutely no guidelines governing the determination as to whether a person is engaged in suspicious loitering, leaves such determination solely up to the discretion of the police officer. Similarly, enforcement of the law depends entirely upon whether the arresting officer is satisfied that a suspect has given—as required by the statute to avoid arrest—a “ reasonably credible account of his conduct and purposes ”. As has been said with respect to such “ satisfactory account ” requirements in vagrancy statutes, ‘ ‘ It takes little imagination to perceive that the ‘ reasonable account ’ (or 1 good account ’ or ‘ satisfactory account ’) requirement of the ordinary vagrancy law operates simply as a charter of dictatorial power to the policeman.” (Amsterdam, op. cit., p. 223.) Thus, whether or not a suspect is hauled off to jail for suspicious loitering depends, for all intents and purposes, upon the whim of the policeman. (See, e.g., Seattle v. Drew, 70 Wn. 2d 405, 411.) In short, the absence *572 of any ascertainable standards governing arrest and conviction under the statute renders fair, even-handed administration of the law a virtual impossibility. This statement from Papachristou v. City of Jacksonville (405 U. S. 156, supra) —in which the court invalidated a vagrancy ordinance penalizing, among other things, ‘ ‘ wandering or strolling around from place to place without any lawful purpose ” (405 U. S., at p. 157, n. 1) —is most apt (405 U. S., at p. 170): “ Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for ‘ harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.’ Thornhill v. Alabama, 310 U. S. 88, 97-98. ”[3]
Still another aspect of vagueness fatally afflicts subdivision 6. By authorizing an arrest for loitering “ under circumstances which justify suspicion that [a person] may be engaged or about to engage in crime, ’ ’ subdivision 6 of section 240.35 plainly undercuts the constitutional requirement that arrests are lawful only upon a showing of “probable cause.” As the Supreme Court pointed out in the Papachristou case (405 U. S., at p. 169),
“We allow our police to make arrests only on ‘ probable cause, ’ a Fourth and Fourteenth Amendment standard applicable to the States as well as to the Federal Government. Arresting a person on suspicion, like arresting a person for investigation, is foreign to our system, even when the arrest is for past criminality.
* * *
“ A direction by a legislature to the police to arrest all ‘ suspicious ’ persons would not pass constitutional muster. A vagrancy prosecution may be merely the cloak for a conviction which could not be obtained on the real but undisclosed grounds for the arrest.”
*573 Manifestly, this constitutional infirmity of general vagrancy • ordinances — that they may be used by the police to obtain custody of a person whom they suspect of more serious offenses but whom they cannot lawfully arrest for such crimes because there is no probable cause to support such an arrest—is equally inherent in the general loitering provision in the present case.
As bearing on this, it is interesting and relevant that the American Law Institute discarded a loitering provision (Model Penal Code, § 250.12 [Tent. Draft. No. 13,1961] )[4] very like subdivision 6 and substituted a far more specific and tightly drawn provision (Model Penal Code, § 250.6 [Proposed Official Draft, 1962]),[5] in order “to save the section from attack and possible invalidation as a subterfuge by which the police would be empowered to arrest and search without probable cause ” (Comment, p. 227, to Model Penal Code, § 250.6 [Proposed Official Draft, 1962]).
In this case, the defendant may very well have been conscious of the importance of protecting the identity of a young lady who was “ the other party ” on a “ sparking expedition ”. Man *574 ifestly, prohibiting such harmless conduct serves no reasonable State interest consistent with the Fourth or Fifth Amendment. It violates the “ privileges and immunities ” clause of the Fourteenth Amendment by restricting the free movement of citizens of the United States through the State of New York (Edwards v. California, 314 U. S. 160, 178 [1941]; Twining v. New Jersey, 211 U. S. 78, 97 [1908]). It violates the Fifth Amendment because it punishes a person who fails to identify himself and his probable companion or give an account of his or their conduct and purposes. The “ reasonably credible account ” element requires those of whom it is demanded to choose between a possible loitering prosecution predicate on their silence and possible self incrimination predicated on what statement they make. An arrest is not concerned with a stop which is an entirely different thing (Sibron v. New York, 392 U. S. 40; People v. Rivera, 14 N Y 2d 441, cert. den. 379 U. S. 978 [1965]). While an officer may have a right to inquire into suspicious circumstances, a suspect’s silence may not be used as a predicate for a separate offense such as loitering — “ While the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes they have no right to compel them to answer ” (Davis v. Mississippi, 394 U. S. 721, 727, n. 6).
The overriding consideration is that subdivision 6 of section 240.35 is unconstitutionally vague on its face (see, e.g., Papachristou v. City of Jacksonville, 405 U. S. 156, supra; Palmer v. Euclid, 402 U. S. 544; People v. Dias, 4 N Y 2d 469, supra; Seattle v. Drew, 70 Wn. 2d 405, supra).
Accordingly, the judgment of conviction should be reversed and the complaint dismissed as section 240.35 (subd. 6) of the New York Penal Law is unconstitutional.

. “ § 240.35 Loitering.— A person is guilty of loitering when he : * 6 ° 6. Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes ”.

. The third conjunctive element of subdivision 6 that “ upon inquiry * * * [defendant] refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes ” is not actually a substantive element of the violation but rather a “procedural condition” to arrest under the statute. *570 (People v. Schanbarger, 24 N Y 2d 288, 291-292; People v. Merolla, 9 N Y 2d 62, 68; People v. Bell, 306 N. Y. 110,115.) A discussion of this sort of provision appears hereafter (infra, p. 571).

. It is, of course, no answer to assert that the police will, in fact, attempt to administer the law in good faith and try not to abuse the virtually unrestricted discretion it confers. As the Supreme Court stated sometime ago, “ Well-intentioned prosecutors and judicial safeguards do not neutralize the vice of a vague law.” (Baggett v. Bullitt, 377 U. S. 360, 373.)

. Thus, section 250.12 of the Model Penal Code’s Tent. Draft No. 13 provides: “ A person who loiters or wanders without apparent reason or business in a place or manner not usual for law-abiding individuals and under circumstances which justify suspicion that he may be engaged or about to engage in crime commits a violation if he refuses the request of a peace officer that he identify himself and give a reasonably credible account of the lawfulness of his conduct and purposes.”

. The revised loitering provision reads as follows (Model Penal Code, § 250.6 [Proposed Official Draft, 1962]): “A person commits a violation if he loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the actor or other circumstances makes it impracticable, a peace officer shall prior to any arrest for an offense under this section afford the actor an opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true and, if believed by the peace officer at the time, would have dispelled the alarm.”