OPINION OF THE COURT
Ralph Yachnin, J.
Defendant has made a motion under CPL 170.40 to dismiss this action in the furtherance of justice. In examining the merits, the court, of necessity, must examine the statute upon which the charge is laid, to wit: subdivision 4 of section 3397 of the Public Health Law and is constrained to comment upon it.
The pertinent part of the statute in question is as follows: “4. Any person who, in the course of treatment, is supplied with a controlled substance or a prescription therefore by one practitioner and who, without disclosing the fact, is supplied during such treatment with a controlled substance or a prescription therefore by another practitioner shall be guilty of a violation of this article.”
The acts of the defendant which the People allege violate the statute are, in summary, as follows: on or about October 6, 1981, the defendant saw a Dr. Kersi Gazdar, a psychiatrist, for her pre-existing psychotic condition. Dr. Gazdar prescribed a controlled substance (Valium) as part of the medication for her treatment.
*692 On the same day defendant also saw Dr. John Ingrassia for back pains. Dr. Ingrassia also prescribed the same controlled substance (Valium) as part of the medication for her back treatment. The defendant did not mention to either physician the medication prescribed by the other. Subsequently, she was arrested and charged with a violation of subdivision 4 of section 3397 of the Public Health Law.
Although this is a motion under CPL 170.40, the court cannot simply overlook a legal impediment in the prosecution of the defendant, for the People interpret the Public Health Law section to mean that a violation occurs upon obtaining a controlled substance from more than one practitioner and concealing from each practitioner the fact that the substance has already been supplied by the other. They maintain that this is so, even though the controlled substance was prescribed for the treatment of two completely different ailments.
At the beginning of the subject statute the phrase is used, “in the course of treatment”. Thereafter the phrase, “such treatment”, is used. The only logical interpretation for these two phrases is that they must relate to the same ailment. In other words, the People, to make out a prima facie case, would have to show that the defendant went to one doctor for an ailment, received a controlled substance and, then, went to another doctor for the same ailment and obtained a controlled substance. However, in this case that conflicts with the fact pattern, for the defendant saw a psychiatrist for a pre-existing psychotic condition and, then, went to a physician for the treatment of her back ailment. There is no doubt that the psychiatrist did not treat for the back condition, as there is no doubt that the physician did not treat for the psychotic condition. Yet, according to the People’s version, the defendant could be deemed a criminal if the two doctors, treating for different ailments, happen to prescribe a controlled substance and the defendant did not tell either doctor about the other’s prescription.
The statute is so poorly worded that not only did the District Attorney make that interpretation, but they could have obtained the same understanding even though there *693 were two completely different drugs prescribed, which were both controlled substances, for the statute does not provide that each prescribed controlled substance must be the same. With the variety of controlled substances set forth under the law, it is virtually impossible for any person not very conversant both with the law and pharmacology to be able to know which substances, other than the common ones, are controlled and which are not.
Further, the statute neglects to set forth within what period of time the obtaining of more than one controlled prescription is deemed criminal. Hence, it can be argued that if a person has a controlled substance which was obtained in 1980 and another in 1983 from different doctors and for different conditions, that person may have committed a crime.
As if that is not sufficient to show the vagueness of this statute, one has but to visualize the many times that a person goes to a doctor’s office, tells the doctor of his condition, is examined and, then, receives a prescription. In so many cases the doctor jots it down on his prescription pad without telling the patient what it is for. It is legend that a doctor’s penmanship is unreadable and the prospective defendant first finds out what the substance is only after the pharmacist types it on the little label that goes inside the prescription vial. However, once that prescription is filled, under this statute, that prospective defendant is now liable for criminal action, even though he did not know and had no way of knowing what the scribblings on the prescription form were.
An examination of the rules of construction of statutes is necessary at this point. The general rule is that a penal statute is strictly construed in favor of the accused and this rule is relevant in the subject matter in that “A penal law or statute is one which inflicts a penalty for its violation, or imposes penalties upon offenses committed.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 273, pp 441-442.) Clearly, subdivision 4 of section 3397 of the Public Health Law is penal as it qualifies for this statutory construction. Further, in order for a criminal statute to be valid, it must be informative and so explicit that all persons subject to its *694 penalties may know what acts it is their duty to avoid. (People v Berck, 32 NY2d 567.)
The statute clearly contains ambiguities in putting the onus on the patient to know what the practitioner is prescribing, that it has been declared a controlled substance and to inform that practitioner that another controlled substance was supplied by some other doctor. The statute leaves several elements ambiguous, such as the time factor between the prescriptions and whether the patient is in fact taking the medicine although it has been prescribed.
The interpretation of this statute should not be expanded to encompass a variety of unwitting patients who are given controlled substance prescriptions voluntarily by various practitioners for different ailments. This court espouses the legislative intent of section 276 of Statutes (McKinney’s Cons Laws of NY, Book 1, p 446) which states in part: “if a statute makes penal the doing of something not previously unlawful, the language of the statute should be given a reasonable construction to carry into effect the purpose of the Legislature, but it cannot be enlarged, so as to make penal what is not plainly written in the statute itself. Words employed in such a statute should be given their ordinary and usual meaning, and should not be construed as to make out a crime by implication.”
Before the court bases its ultimate decision in this matter upon subdivision 4 of section 3397 of the Public Health Law, it must take into consideration section 150 of Statutes (McKinney’s Cons Laws of NY, Book 1) which permits a court to strike down a legislative enactment only as a last resort if it conflicts with the State or Federal Constitution. Further, the courts should uphold a legislative act whenever possible. In addition, “A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable.” (Id., § 150, p 312.) With this in mind, this court is not prone to pass on the unconstitutionality of this statute, even though it concludes that its vagueness and ambiguities would not permit it to pass constitutional muster. “In line with the doctrine that courts will not decide constitutional issues except where such a decision is unavoidable is the rule that *695 where a decision in a particular case may be rested on alternative grounds, one constitutional and the other non-constitutional, the latter ground will ordinarily be chosen.” (20 NY Jur 2d, Constitutional Law, § 48, p 103.)
Accordingly, this court now turns to CPL 170.40, the basis of this motion. The aforesaid section sets forth certain criteria which must be examined into before making a determination as to the items and how they apply in this situation and they are as follows:
(a) The seriousness and circumstances of the offense. While the charge is serious, i.e., obtaining a controlled substance, the circumstances wherein two physicians prescribed it for different ailments far outweighs its seriousness.
(b) The extent of the harm caused by the offense. None.
(c) The evidence of guilt, whether admissible or inadmissible at trial. Under a proper interpretation of the statute, the fact pattern in this matter would, undoubtedly, cause it to be dismissed for failure to make out a prima facie case at the end of the People’s case.
(d) The history, character and condition of the defendant. The defendant was a psychotic at the moment the alleged crime was perpetrated. Nothing more need be said as to this criteria.
(e) Any exceptional serious misconduct of law enforcement personnel in the investigation, arrest and prosecution of the defendant. None.
(f) The purpose and effect of imposing upon the defendant a sentence authorized for the offense. To impose a sentence for this offense, which the court believes was neither an offense under the statute nor in the defendant’s mind, would be a travesty.
(g) The impact of a dismissal on the safety or welfare of the community. The only impact this could have is one that is salutary, for society would be reinforced in its understanding that the courts will not impose a penalty for a law which is improperly interpreted.
(h) The impact of a dismissal upon the confidence of the public in the criminal justice system. The answer is set forth in (g) above.
*696 Accordingly, this court grants the motion of the defendant and dismisses this action.