OPINION OF THE COURT
Joseph P. McCarthy, J.
"Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty.” (Kolender v Lawson, 461 US 352, 357.) Included among the paramount legal doctrines applicable to the continual attempt to attain this goal is that which requires legislative bodies, in enacting penal statutes or ordinances, to specify the conduct which must be taken or avoided in reasonably precise language. A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement”. (Kolender v Lawson, supra, p 357.) This appeal focuses upon an ordinance of *878 the City of Buffalo which transfers the power and authority to determine what conduct must be taken, in an unlimited range of factual circumstances, to the police and thus represents an abdication of the legislative function. Since the ordinance itself does not specify what conduct a person must or must not take, it fails to satisfy the due process clause of the 14th Amendment.
On June 24, 1984 the defendant was arrested by a City of Buffalo police officer and charged with disorderly conduct in violation of Ordinances of the City of Buffalo, ch IX, § 24, and resisting arrest in violation of Penal Law § 205.30.
Ordinances of the City of Buffalo, ch IX is entitled "disorderly conduct” and subdivision (1) of section 1 provides: " 'Disorderly conduct’ means the doing or commission of any of the acts prohibited in this chapter, and any person who shall do or commit any of said acts shall be guilty of disorderly conduct.”
Section 24 reads as follows:
"Sec. 24. Resisting Officer In Discharge Of Duty "No person shall refuse to obey a reasonable order or request of a police officer in the discharge of his regular duty; no person shall resist or interfere with any officer or employee of the city in the discharge of his regular duty (Ord. of 5-31-83)”.*
The information upon which the defendant was arraigned states that he declined to obey a police officer in the discharge of his duty "in that the defendant did refuse to leave the area when requested several times by the officer. Officers arrived at the scene of an accident * * * and found the individual at the back of the ambulance. Officer requested the defendant to leave the area several times, and the defendant refused and told the officer '[expletive deleted].’ ”
The resisting arrest charge is based upon the defendant’s conduct upon his arrest for refusing to comply with the officer’s request that he leave the area. It is undisputed that the resisting arrest charge must be dismissed if the defendant’s arrest for failing to leave the area was unauthorized.
Following his arraignment, the defendant moved to dismiss the information upon his contention that Ordinances of the *879 City of Buffalo, eh IX, § 24 is facially unconstitutional. City Court determined that section 24 is unconstitutionally vague and dismissed both of the charges (People v Flinn, 126 Misc 2d 570). The People appeal.
Initially, the order from which the appeal is prosecuted reflects that section 24 in its entirety is unconstitutional. At issue here, however, based upon the allegations set out in the information is solely the first portion or clause of section 24 which mandates obedience to the reasonable orders of a police officer given in the discharge of his regular duty. The second clause of section 24 which prohibits resistance or interference with officers or employees of the city and which reflects the legislative intent to proscribe separate and discrete conduct is not now implicated.
To the extent that the City Court found the first clause of section 24 void for vagueness, this court concurs with that determination. While the ordinance is not vague in the sense that it requires obedience to reasonable requests and orders, it is nevertheless constitutionally vague because it authorizes the police to decide what standards of conduct we must follow or avoid. Under our system of government, the role of the police is to enforce the law and in the fulfillment of that function it is the police officer who, in the first instance, decides whether an individual’s conduct is violative of a particular legislatively established standard of behavior. This ordinance, however, requires the police to determine what conduct is proper or improper not by reference to a legislative standard but to his own concept of reasonability, and to enforce that determination through an order or request. The failure of the ordinance itself to establish an objective standard of conduct renders it constitutionally defective.
The ordinance thus allows the police to make the law as well as to enforce it. In so doing it permits the arrest and prosecution of individuals engaged in lawful activity which conflicts with objectively reasonable police requests. It may, for example, allow for an officer to order an individual standing on a street corner to move on. Although it is established that loitering, without more, is not illegal (People v Berck, 32 NY2d 567; People v Diaz, 4 NY2d 469), a failure to comply with the order could result in the individual’s immediate incarceration despite the legality of his presence on the street.
Likewise, an officer may reasonably inquire into suspicious circumstances in the discharge of his duties and request an *880 answer to his questions. However, he has no right to compel an answer. It is long-settled law that the refusal to answer pertinent questions, absent probable cause, furnishes no basis for an arrest (Davis v Mississippi, 394 US 721, 727, n 6; Terry v Ohio, 392 US 1, 34 [White, J., concurring]). Again, however, the city ordinance would authorize an arrest in such circumstances notwithstanding the lawfulness of the noncompliance with the officer’s request.
Similarly, a police officer might reasonably request to search a person’s home or vehicle in the discharge of his duties. Although one has a right to refuse to consent to such a search, the exercise of this right could by virtue of the terms of the city ordinance, result in his arrest.
Additional examples of the conflict between reasonable police requests and the free exercise of constitutional rights could readily be cited. There is no question that this ordinance harbors the ready potential to arbitrarily interfere with freedom of movement and to suppress 1st Amendment freedoms (see, Kolender v Lawson, 461 US 352, 358, supra). Clearly, this ordinance allows the arrest of individuals engaged in annoying or socially undesirable but constitutionally protected activity.
The authority it confers upon the police is virtually unrestrained and the ordinance thus lends itself to discriminatory and harsh enforcement. As indicated, it is the police officer who, by issuing an order or making a request, defines the action which an individual must take or avoid. The language of the ordinance contains no attempt to define or delimit the words “reasonable order or request”. What may be a reasonable request in the mind of a police officer may be unreasonable to the person of whom the request is made. Conduct which may inspire one police officer to issue an order may be disregarded as innocuous by another. Surely the validity of an arrest should not turn solely on the tolerance or lack of politeness of a particular police officer.
Nor does the requirement that the order or request be given “in the discharge of [the officer’s] regular duty” sufficiently limit the scope of the ordinance. Indeed, as to the duties of a police officer the District Attorney cites the Charter of the City of Buffalo which charges the police department with the duty to preserve peace and good order, to prevent violations of the law, to apprehend offenders, to protect the rights of persons and property and to safeguard the public health. *881 Under this formulation few, if any, activities of a police officer would fall outside the discharge of his regular duty.
Additionally, the ordinance does not require that one intentionally or willfully refuse to obey an order and therefore an inadvertent noncompliance may be punished (compare, People v Bakolas, 59 NY2d 51, 54). Nor is there an element of this offense which requires that the person to whom a request is made know that it is made by a police officer (see, Landry v Daley, 280 F Supp 968, 972-973). While these elements might be imported into the ordinance by judicial interpretation, its core constitutional deficiency would remain nonetheless.
Upon an arrest for the violation of the ordinance it becomes the responsibility of the courts to determine, on an individual basis, whether the particular order was reasonable. Since the ordinance contains no legislatively fixed standards, it improperly leaves Judges, as well as the police, to decide what is prohibited and what is not in each case (People v Scott, 26 NY2d 286, 292-293). What may be regarded as a reasonable order by one Judge may be deemed unreasonable by another. A penal enactment must prevent the police, the prosecutor and the courts from following their "personal predilections” (Smith v Goguen, 415 US 566, 575). This ordinance does not do so.
A penal ordinance must describe the particular conduct it prohibits and this "element cannot be left to conjecture, or be supplied by either the court or the jury. It is of the very essence of the law itself, and without it the [ordinance] is too indefinite and uncertain” (Connally v General Constr. Co., 269 US 385, 392, citing United States v Capital Traction Co., 34 DC App 592, 596).
While the courts and the police may administer and apply the ordinance in good faith and without abusing the discretion it permits, this does not cure its vagueness (Baggett v Bullitt, 377 US 360, 373). A punitive legislative enactment must be so explicit when it leaves the Legislature that persons know from reading it what conduct they must avoid. An enactment which requires men of common intelligence to speculate upon its meaning and differ as to its application is violative of the first essential of due process of law (Connally v General Constr. Co., supra, p 391; People v Berck, 32 NY2d 567, 575 [dissenting opn of Breitel, J.]).
This ordinance is vague because it fails to spell out a specific standard of conduct which we must obey. As observed *882 by the Supreme Court of the United States: "The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of anti-social conduct. It can do so through the enactment and enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. Gregory v. Chicago, 394 U.S. Ill, 118, 124-125 (Black, J., concurring). It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed.” (Coates v City of Cincinnati, 402 US 611, 614.)
The declaration that this ordinance fails to satisfy long-established constitutional requirements does not, of course, signify that law enforcement officers are to be deprived of effective and appropriate means to deter and detect criminality. In light of the provisions of the Penal Law such as obstructing governmental. administration, disorderly conduct and harassment as well as the provisions of the Vehicle and Traffic Law which touch upon the areas related to the city ordinance, its nonavailability should not impede the mission of the police in enforcing the law. In this respect, it warrants observation that no ordinance similar to the "reasonable request” ordinance of the City of Buffalo was noted by the parties or found by the court to exist in other New York jurisdictions.
In sum, the portion of the ordinance in question fails to describe in adequate particularity what a person must do to satisfy its requirements and it thereby encourages arbitrary enforcement; it is therefore void on its face.
On the determination made, it is unnecessary to address the other questions raised by the parties as to the unconstitutionality of the ordinance. Such issues should not be decided absent the necessity of doing so.
The order appealed from should be and is affirmed.

 Violation of this ordinance is punishable by a fine of up to $1,500 and imprisonment not in excess of 15 days (Ordinances of City of Buffalo, ch Cl, §D.