Harold J. Rothwax, J.
On February 9, 1974, at approximately 5:00 p.m., the defendant was arrested in the" men’s room of the suburban concourse of the Port Authority Bus Terminal and charged with loitering in a transportation facility (Penal Law, § 240.35, subd. 8).[1] He was shortly thereafter searched incident to the arrest and methadone, a controlled substance, was found in his coat pocket. The defendant was then also charged with criminal possession of a controlled substance in the seventh degree (Penal Law, § 220.03).
The defendant has moved to dismiss the loitering charge on the grounds that the statute is unconstitutional on its face and as applied, and he has moved to suppress the seized contraband, alleging that the arrest under the loitering statute was unlawful because of the statute’s invalidity and the absence of probable cause.
A hearing was had on the motion to suppress. At that hearing only the arresting officer, Patrolman James O’Neill, of the Port Authority Police, testified. Officer O’Neill stated that prior to the arrest he had been told by a brother officer that the defendant had been in the terminal for about two hours and ‘ ‘ had not made any attempts to use the facilities. ’ ’ O ’Neill was also told that the defendant had entered the men’s room approximately 15 minutes before the officers encountered each other. O’Neill, who was in uniform, then entered the men’s room, saw the defendant briefly in the area of the cubicles, and then left. After a five-minute interval he returned, and observed that the defendant was in front of empty cubicles but was making no attempt to use them. After circling the men’s room, O’Neill approached the defendant and asked him if he intended to take a bus; the defendant said no. O’Neill asked the defendant his reason for being in the men’s room; the defendant *751 said he intended to use the cubicles. The officer said there were empty cubicles and the defendant did not reply. O’Neill stated that he then advised the defendant “ that if he wasn’t going to take a bus or use the cubicles, he was going to be placed under arrest.” The defendant was then arrested.
The officer testified that he did not observe the defendant annoy any other people or make any noise. We do not, of course, know what the defendant was doing in the men’s room during the 20 minutes that the officers were not observing him. Nor is the record clear about the observations of O’Neill’s brother officer during the hours preceding the arrest. Presumably, if the latter had observed the defendant engage in criminal activity he would have taken appropriate action.
During the course of his testimony Officer O’Neill volunteered that the defendant appeared to be intoxicated, though he had no smell of alcohol on his breath. He testified that the defendant’s eyes were watery and his pupils pinpointed “ which indicated to me a narcotic high.” Some weeks after the conclusion of the hearing on the motion to suppress, the District Attorney moved orally to add a count of public intoxication (Penal Law, % 240.40) to the information. It is clear from the record that this defendant was not arrested or charged with public intoxication. Additionally, the record is insufficient to warrant the proffering of such a charge at this time. The defendant was, according to the testimony, observed for a period in excess of two hours. There is no indication that during that period of time he endangered himself or other persons or property or that he annoyed other persons. Nor is there any evidence of loss of control of his physical or mental faculties nor impairment of his capacity to think and act correctly. (People v. Bevilacqua, 12 Misc 2d 558, revd. on other grounds 5 N Y 2d 867.) The motion to add a count of public intoxication is denied.
In proceeding to analyze the constitutionality of the loitering statute here in issue, I am mindful that “ there is a strong presumption that a statute duly enacted by the Legislature is constitutional” (People v. Pagnotta, 25 N Y 2d 333, 337), and “ that in order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40.) ”
Due process, however, requires that a penal statute contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at its meaning (Winters v. New York, 333 U. S. 507; Lanzetta v. New Jersey, 306 U. S. 451; Connally v. General Constr. Co., 269 U. S. 385). A penal *752 law is void for vagueness when it ‘1 fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden (United States v. Harriss, 347 U. S. 612, 617; Papachristou v. City of Jacksonville, 405 U. S. 156,162.)
Although the void-for-vagueness doctrine has traditionally been viewed as concerned principally with the problem of fair notice to the potential criminal actor, ‘ ‘ perhaps the most meaningful aspect of the vagueness doctrine is not actual notice but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement.” (Smith v. Goguen, 415 U. S. 566, 574.) A vague statute violates due process by permitting and encouraging arbitrary and erratic arrests and convictions. It u places virtually unfettered discretion in the hands of the police and thereby encourages arbitrary and discriminatory enforcement. ’ ’ (People v. Berck, 32 N Y 2d 567, 571.)
The District Attorney, in arguing for the validity of the statute, does not contest or challenge the void-for-vagueness doctrine. He maintains that in People v. Bell (306 N. Y. 110), the Court of Appeals upheld as sufficiently definite the virtually identically worded statute in the former Penal Law.[2] He urges further that that holding has not been vitiated by the subsequent decisions of the Court of Appeals which have discussed or cited Bell: People v. Diaz (4 N Y 2d 469); People v. Johnson (6 N Y 2d 549); People v. Merolla (9 N Y 2d 62); People v. Berck (32 N Y 2d 567, supra).
In People v. Bell (supra, p. 113), the Court of Appeals affirmed the dismissal of the loitering charge against the defendants for lack of proof and then proceeded to state their construction of the statute. They declared that the legislative intent was ‘ ‘ to prevent persons from infesting * * * railway stations who have no occasion to be there,” and to deal with “ the danger to the public * * * which arises from the congregation of nondescript characters at such locations, particularly at night, where degenerates * * * may easily become anything from a public nuisance to a serious menace.”
I most respectfully suggest that the use of such words and phrases as “ infesting ”, 11 who have no occasion to be there ”, *753 “ nondescript characters ”, “degenerates”, and “may easily become ’ ’, does little to clarify or define the appropriate scope of the statute or to provide standards to guide law enforcement personnel in its administration. Definiteness is not attained by such descriptions.
The court then went on to define loitering as follows: “ Loitering is a word in common usage, whose meaning is well understood, and prohibiting it in this context signifies that persons should not linger about stations under circumstances which fall short of rendering them implied invitees or licensees of the railroad. ’ ’
But the very existence of a station ‘ ‘ implies an invitation or license to enter ” (People v. Bell, supra, p. 113) for a wide variety of lawful and innocent purposes which are too numerous to name and which need not be, as the court recognizes in Bell, connected with the obtaining of transportation.
Faced with the problem of identifying those “ circumstances ” in which the defendant will “ fall short” of being an implied invitee or licensee the court declares that the “legitimacy” of the defendant’s “ errand ” “can be decided as the case arises.” (People v. Bell, supra, p. 114.) Surely, it is clear that such a conclusion fails to give the prospective defendant fair notice or provide law enforcement with minimal guidelines. It cannot be sufficient to state, as the court does, that ‘ ‘ under certain circumstances, an entrant may become a trespasser ’ ’ and that whether he is “ depends upon the facts of the particular case.” (People v. Bell, supra, p. 114.) The “ circumstances ”, to be criminal, must be stated with clarity. “ No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.” (Lanzetta v. New Jersey, 306 U. S. 451, 453, supra.)
Yet the court in Bell went no further than I have indicated in defining loitering. Indeed, their main concern over the vagueness of the statute was not with the loitering phrase at all. The court declared that the subdivision ‘‘ would concededly be valid ” if it merely prohibited loitering. (People v. Bell, supra, p. 114.) ‘ ‘ Whatever doubt exists concerning its constitutionality arises from * * * ‘ and who is unable to give a satisfactory explanation of his presence ’ ”. (People v. Bell, supra, p. 114.)
The court held that the “ satisfactory explanation ” provision was merely a procedural prerequisite requiring that the defendant be given an opportunity to explain his presence before *754 a prosecution could proceed. It did not require the defendant to satisfy the officer; it obliged the officer to inquire before proceeding further. A “ satisfactory ” explanation is “ merely one which shows ’ ’ that the defendant is not a trespasser. (People v. Bell, supra, p. 115.)
Five years later, the Court of Appeals in People v. Diaz (4 N Y 2d 469, supra) struck down a city ordinance which provided that ‘ ‘ no person shall lounge or loiter about any street or street corner. ’ ’ The court held (p. 470) that: ‘1 While the term ‘ loiter ’ or £ loitering ’ has by long usage acquired a common and accepted meaning (People v. Bell, 306 N. Y. 110), it does not follow that by itself, and without more, such term is enough to inform a citizen of its criminal implications and, by the same token, leave it open to arbitrary enforcement. ”
The court further stated (p. 471) that: ‘1 Whenever a conviction for loitering has been upheld, it is because the statute uses the term £ loiter ’ or £ loitering ’ to point up the prohibited act, either actual or threatened.”
The court found (p. 471) the ordinance invalid because it made £ 1 no distinction between conduct calculated to harm and that which is essentially innocent. ’ ’
It appears that Diaz overruled Bell sub silentio. Diaz had no ££ satisfactory account” provision. Bell had indicated that without the latter the mere prohibition of loitering ‘1 would concededly be valid ” (People v. Bell, supra, p. 114). Diaz holds that unless we ££ point up ” the prohibited act££ loitering ” is too vague. The statute in Bell does not pinpoint its prohibitions. The cases, however, are distinguishable in that the ordinance in Diaz applied to the streets of a city; in Bell we deal with a transportation facility. I will postpone for the moment my discussion of whether that is a meaningful distinction and one, therefore, that should have legal consequence.
Shortly after Diaz, the Court of Appeals was called upon, in People v. Johnson (6 N Y 2d 549, supra) to decide the validity of a statute prohibiting loitering in school buildings. The statute prohibited anyone who was not a parent or legal guardian of a pupil from loitering in or about a school without written permission or in violation of posted rules or regulations.
In upholding the statute, the court found (p. 552) a “vast difference ” between a public street, as in Diaz, and a school, even a public one: “ A school is in a sense public in that it is endowed and operated by the taxpayer’s money, but it is not public in the sense that any member of the public may use it for his own personal purposes, and is justifiably the proper subject for *755 proscribed acts such as loitering. A school building being of such a restricted public nature, the attack * * * . on constitutional grounds is wholly without merit.”
The court in Johnson emphasizes two points. First, the statute is clear in identifying those who are subject to its provisions and what they must do to obtain exemption. Second, the statute is clear in stating that presence in a school without authority or permission is a violation of the act. The court finds (p. 553) that the ‘1 nature of the activity carried on in a school ’ ’ compels and justifies the restrictions imposed.
It is clear, of course, that a transportation facility, unlike a school, is not of a 11 restricted public nature”. Further, the statute in Johnson “ points up ” the prohibited act. Johnson, in short, provides no basis for upholding the validity of the statute here in issue.
In People v. Merolla (9 N Y 2d 62, supra) the Court of Appeals construed and upheld a statute prohibiting loitering upon a waterfront facility without a satisfactory explanation. The facility in question was one used for loading and unloading merchandise; there was an enclosed structure on the pier and a wire fence enclosing the area; the court found (p. 69) that the defendant “was not on a public street.” In its analysis, the court (p. 66) cited Dias for the proposition that the term “loitering” when taken by itself, and without more, does not sufficiently inform a citizen of its criminal implications and permits arbitrary enforcement. The court, however, went on to declare (p. 66) that: “The clarity and certainty necessary to satisfy constitutional requirements may be acquired, however, by reference to the context in which the. term is used.”
The court then distinguished Dias from Johnson and Bell. Dias concerned public streets and the context was not sufficient to distinguish between conduct calculated to harm and that which was essentially innocent. Johnson, however, involved public school buildings and their “restricted public nature” provided a context which satisfied constitutional requirements.
The court then concluded (p. 67) that Bell, like Johnson, had a statute dealing with ‘ ‘ specific facilities ’ ’ and that: “ In dealing with a specific facility such as a railroad or subway, the proscribed misconduct was readily ascertainable and * * * the statute, and the term loitering in particular, were thus susceptible of definite and clear construction by reference to the statutory context and occasion.”
In short, the proscribed misconduct is (p. 68) “ readily ascertainable ” because the facility is “ specific ”, it has a “ known *756 utility and purpose ” and the likelihood of illegal activity is notorious.
This seems to suggest that a specific facility is one of limited size or knowable boundary which is open to the public, if at all, for limited, narrow and clearly defined purposes which forewarn the criminal actor of the prohibited conduct by its restricted public nature.
Finally, in People v. Berck (32 N Y 2d 567, supra), the Court of Appeals, last year, invalidated, as unconstitutional, subdivision 6 of section 240.35 of the Penal Law.[3]
In doing so, the court, reaffirmed its holding in Dias that “loitering” on a street without more and “standing alone could not possibly be held to give sufficient notice of the conduct proscribed.” iSuch a statute, the court declared, is both vague and overbroad because it fails “ ‘ to point up the prohibited act, either actual or threatened ’ ” and fails to advise the citizen “ in sufficiently clear and unambiguous terms of the distinction between ‘ conduct calculated to harm and that which is essentially innocent.’” (People v. Berck, supra, p. 570; People v. Diaz, supra, p. 471.)
The court then went on to state (p. 570) that: “ The loitering statutes which we have upheld against attack on the ground of vagueness are., altogether different from the sort of provision here challenged. (See, e.g., * * * People v. Merolla, 9 N Y 2d 62; People v. Johnson, 6 N Y 2d 549; People v. Bell, 306 N. Y. 110.) In each of the cited decisions, the statutes before the court were sustained either because they clearly “ point [ed] up ” the prohibited act * * * or else restricted loitering only at specific facilities where the likelihood of illegal activity was notorious (e.g., People v. Merolla, 9 N Y 2d 62, supra; People v. Johnson, 6 N Y 2d 549, supra; People v. Bell, 306 N. Y. 110, supra).
One other aspect of Berch is worthy of note. It should be recalled that in Bell the court had dealt with the “ satisfactory explanation ” requirement as one which restricted the scope of the statute for the defendant’s benefit, and held that its effect was to impose a procedural condition rather than add a substantive element to the offense. (People v. Bell, supra, p. 115.) *757 In Merolla, where a similar allegation was made that such a provision was vague and indefinite, the court held (p. 68) that such a contention ‘ ‘ has already been answered completely by our decision in the Bell case.”
In Berck, however, the court, without citing these holdings in either Bell or Merolla, speaks most harshly and disapprovingly of such a provision (p. 571): “ enforcement of the law depends entirely upon whether the arresting officer is satisfied that a suspect has given — as required by the statute to avoid arrest — a ‘ reasonably credible account of his conduct and purposes. ’ As has been said with respect to such ‘ satisfactory account ’ requirements in vagrancy statutes, ‘ It takes little imagination to perceive that the “ reasonable account ” (or “ good account ” or “ satisfactory account ”) requirement of the ordinary vagrancy law operates simply, as a charter of dictatorial power to the policeman. ’ [Citation omitted.] Thus, whether or not a suspect is hauled off to jail for suspicious loitering depends, for all intents and purposes, upon the whim of the policeman.”
In short, the court holds, ‘ ‘ the absence of any ascertainable standards governing arrest and conviction * * * renders fair, even-handed administration of the law a virtual impossibility.” (People v. Berck, supra, pp. 571-572; and see the concurring opinion of Desmond and Fuld, JJ., in People v. Bell, supra, pp. 116-117.)
The court also holds that the “ satisfactory account” provision is unconstitutional because it ‘ ‘ requires those of whom it is demanded to choose between a possible loitering prosecution predicate on their silence and possible self incrimination predicated on what statement they make.” (People v. Berck, supra, p. 574.)
■ In reviewing and synthesizing the above cases, some other observations must be noted.
The section of the former Penal Law, upheld by the court in Bell, is arguably of narrower and more specific scope than the provision here in issue. That section was found in an article concerned exclusively with ‘ ‘ Railroads ’ ’ and the subdivision was limited to “ any toilet, station or station platform of a subway or elevated railway or of a railroad ” (former Penal Law, § 1990-a, subd. 2). ¡ Subdivision 8 of section 240.35 of the revised Penal Law, on the other hand, appears in an article concerned with “ Offenses Against Public Order ”, and the term “transportation facility” is designedly defined more broadly to include any place connected with public passenger transportation including terminals “ and all appurtenances thereto.” *758 (Penal Law, § 240.00, subd. 2). Indeed, the Practice '-Commentary to subdivision 8 of section 240.35 of the Penal Law acknowledges that the section is ‘ ‘ slightly broader ’ ’ than its predecessor. This takes on meaning in the light of the discussion above regarding “ specific ” facilities and the importance of “ context.”
Additionally, and importantly, it should -be noted that the court’s analysis in Bell proceeds on -the theory of trespass. This may well be because the trespass provisions in the former Penal Law (see, e.g., § 1425, subd. 9, § 2036) were, at best, ill defined and narrow in scope. The revised Penal Law, however, corrects these deficiencies by presenting in various degrees the offense of “ criminal trespass ” (Penal Law, §§ 140.05-140.17).
Indeed, subdivision 5 of section 140.00 of the Penal Law, provides that: “ A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.”
This provision requires that a “ lawful ” order not to enter or remain be personally commuhicated to the person who is unwelcome, before such person can be deemed to have *1 entered or remained unlawfully.”
It thus appears that the holding in Bell, insofar as it applies to “ premises which are at the time open to the public ”, is not binding or controlling at this time. Section 140.05 of the Penal Law,[4] is the statute that clearly and comprehensively addresses the need expressed in Bell.
Bell is further undercut by the court’s subsequent holding in Fenster v. Leary (20 N Y 2d 309), which declared the vagrancy statute .unconstitutional. It will be recalled that Bell found that the legislative purpose of the loitering statute was to deal with ‘ ‘ the danger to the public * * * which arises from the congregation of nondescript characters * * * where degenerates * * * may easily become anything from a public nuisance to a serious menace.” (People v. Bell, supra, p. 113.) Fenster throws into question the legitimacy of such labeling as a basis for authorizing either round-ups or individual arrests. Status is not by itself a sufficient predicate for arrest. “ The vagrancy laws were never intended to be and may not be used as an administrative short cut to avoid the requirements *759 of constitutional due process in the administration of criminal justice.” (Fenster v. Leary, supra, p. 316.)
The Practice Commentary to section 240.35 of the Penal Law (McKinney’s Cons. Laws of N. Y., Book 39, CPL 240.35, p. 167) further broadens the application of the statute by not limiting its concern to the public ‘1 danger ” or “ menace ’ ’ found by the court in Bell to be the activating purpose of the predecessor section: ‘ ‘ This section, requiring no intent or likelihood of either public or private alarm, proscribes a series of acts generally deemed unwholesome from a social viewpoint.”
The Practice Commentary to subdivision 8 of section 240.35 of the Penal Law makes no attempt to specify' or define the acts proscribed as “ unwholesome.”
One final observation is necessary regarding the public nature of the Port Authority Bus Terminal. The Terminal building occupies a full city block in the heart of mid-Manhattan. Thousands of persons use the terminal facilities, entering from the subway or through six outside entrances, using the 50-foot wide main concourse and four other levels to get to and from buses, subways, city streets, shops and other concessions. The Terminal contains, in addition to the open concourse areas and waiting rooms, bus line ticket counters, newsstands, restaurants, snack bars, a .bakery, a drugstore, a bar, a bowling alley, a bank, gift shops and various other shops and concessions which are open to the general public. Recently, in Wolin v. Port of N. Y. Auth. .(392 F. 2d 83, 89), the United States Court of Appeals for the Second Circuit had occasion to discuss the public nature of the Terminal: “ As we have already indicated, the character and function of the Terminal, makes clear that it is a thoroughfare used by thousands of people each day. It is one of the busiest passageways in the country, with persons hurrying to and from subways, buses, shops, theaters and other streets. In design and physical appearance, the main concourse resembles a street * * * The Terminal, with its many adjuncts, becomes something of a small city — but built indoors, with its ‘ streets ’ in effect set atop one another, and vehicles operating under, above, and to the side, not unlike some futuristic design for urban living.”
It is clear beyond question from the above description that the Port Authority Bus Terminal is more akin to the streets of Diaz than either the school in Johnson or the waterfront pier in Merolla.
I find subdivision 8 of section 240.35 of the Penal Law unconstitutionally vague on its face and as applied. Though loiter *760 ing is a word in “common usage ” whose meaning is “well understood ”, it was never designed or intended to render innocent conduct criminal. The word is both broad and nebulous, but what it means, by dictionary definition and in everyday speech, is staying about or around a place without any purpose, aimlessly and idly. It has no sinister meaning and implies no wrongdoing or misconduct. Dias found that, without more, the term was insufficient to inform a citizen of its criminal implications. Dias held that, to be valid, the statute must point up the prohibited act. I find that neither by its terms nor its “context” does subdivision 8 do that. Neither the enforcing officer nor the subject citizen can act in a manner which is informed by law. Both Johnson and Merolla are distinguishable. They dealt .with “specific” facilities of a “restricted public nature.” The restriction was announced either by statute, sign or fence and was further made clear by the limited and clearly defined purposes of the facility. Those factors are not present here and their omission is dispositive. The statute is, therefore, unconstitutional because “ loitering ” in this context is too vague.
The validity of the “ satisfactory account ” provision is also in doubt in the light of the holding in Berck, which did not, it will be recalled, limit the phrase in the manner of Bell and Merolla. The failure of the court in Berck to discuss the treatment of that provision by Bell and Merolla leaves its future status uncertain at best. I need not, and do not, reach that issue.
It would not be sufficient to declare the statute merely unconstitutional as applied. There are statutes that by their terms, or as authoritatively construed, apply without question to certain activities, but whose application to other behavior is uncertain. This criminal provision is vague, ‘ ‘ not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.” (Coates v. City of Cincinnati, 402 U. S. 611, 614.) “Such a provision simply has no core. This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause.” (Smith v. Goguen, 415 U. S. 566, 578, supra.) Until it is corrected, it affects all who are prosecuted under the statutory language.
For the foregoing reasons, the loitering charge is dismissed and the motion to suppress the seized contraband is granted.

. § 240.35 Loitering.
“ A person is guilty of loitering when he: * * *
“ 8. Loiters or remains in any transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence. ’ ’

. Subdivision 2 of section 1990-a of the former Penal Law provided that: “ Any person who loiters about any toilet, station or station platform of a subway or elevated railway o-r of a railroad, or who is found sleeping therein or thereon and who is unable to give a satisfactory explanation of his presence is guilty of an offense. ’ ’

. § 240.35 Loitering.
“ A person is guilty of loitering when he: * * *
“ 6. Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes

. § 140.05 Trespass. A person is guilty of trespass when he knowingly enters or remains unlawfully in Or upon premises. Trespass is a violation.