OPINION OF THE COURT
Alfred Donati, J.
Following a five-day trial without a jury on a two-count information, this court found the defendant not guilty on the charge of violation of Penal Law § 145.00 (criminal mischief in the fourth degree) and guilty of an attempt to violate General Business Law § 518 (credit card surcharge prohibited). Prior to *335 the rendering of that verdict defendant orally moved, and after summations in the case supplemented his motions with papers, to dismiss the General Business Law § 518 charge on the grounds that (1) General Business Law § 518 is an unclassified misdemeanor and there exists no basis in law permitting a charge of attempt to commit an unclassified misdemeanor and, in effect, (2) that General Business Law § 518 violated defendant’s due process rights in that, among other things, the section is impermissibly vague as well as arbitrary and capricious. The court reserved decision on those motions and, in view of the court’s conviction of defendant on the charge of attempt to violate General Business Law § 518, treats the motions as motions to set aside the verdict and to dismiss the charge.
(1) As to the motion addressed to the charge of attempt to violate General Business Law § 518, on the ground that no basis in law exists for a charge of attempt to commit an unclassified misdemeanor, Penal Law § 110.00 prohibits an attempt to commit "a crime” and thus to the extent applicable to misdemeanors the provision refers to all misdemeanors, without distinction between those classified and unclassified. Accordingly, the court finds no substance to defendant’s position in that regard and that motion to set aside and to dismiss is denied; (2) as to the motion addressed to the constitutionality of General Business Law § 518, the court finds that conviction of the crime charged thereunder would constitute a denial of substantive due process of law as applied in this case and, accordingly, that motion is granted, the conviction is set aside and that charge is dismissed.
Prior to the commencement of trial herein, defendant moved to dismiss the General Business Law § 518/Penal Law § 110.00 charge pursuant to the Constitutions of the United States and of the State of New York on the grounds, inter alia, of vagueness and selective enforcement. The motions were denied, essentially on the grounds, respectively, that the statute appeared clear and unambiguous on its face and that no facts were shown to demonstrate selective prosecution; however, both questions were impliedly left open for further consideration if and when pertinent facts were established (People v Fulvio, 135 Misc 2d 93). As is apparent, this court’s decision on the issue of the constitutionality of this statute is predicated upon the effect of General Business Law § 518 as applied, at least in this ease, based upon the facts proved at trial and thus the factual situation before Judge McGann and *336 the factual situation developed at this trial are clearly different.
Based upon the evidence adduced at trial, this court found the following facts beyond a reasonable doubt.
On January 22, 1986 the complaining witness, Mr. Barry Gedan, drove his automobile into the Amoco gasoline service station located at 2918 Boston Road in The Bronx, which was leased from Amoco and operated by defendant Eugene Fulvio, having been attracted by the price displayed on signs at the station.
Mr. Gedan chose to use his credit card for his purchase and, in accordance with his understanding of appropriate procedure, presented his credit card to the woman in the cashier’s window who, after verifying that the card was valid, indicated the gasoline pumps Mr. Gedan was to use and activated the mechanism to enable him to pump the gasoline into his automobile. As the pump meter registered the gasoline being pumped, Mr. Gedan noticed that the price being registered was 5 cents per gallon higher than the price on the sign on the top of the pump for that grade of gasoline. Upon completing his pumping of gas, Mr. Gedan reported to the cashier’s window with his credit card to pay for his purchase and complained to the cashier that the pump was registering 5 cents more per gallon than the price on the sign posted on the top of the pump. A dispute then arose between the two as to which price Mr. Gedan was required to pay. Defendant appeared and an argument ensued between defendant and Mr. Gedan on the same subject.
The testimony of both defense and prosecution witnesses, other than defendant, was consistent as to the assertion that the 5 cents per gallon additional charge demanded of Mr. Gedan by defendant and his cashier was based upon the customer’s use of his credit card to pay for his purchase, and the court so found. For example, Mr. Gedan stated, and the court found, that defendant told him the price was 5 cents higher because the credit card price is higher and that he (defendant) charged 5 cents more (per gallon) for his credit card price. Ms. Diaz, the cashier, stated, and the court found, that defendant had instructed her as to the method for charging customers who used a credit card, that she told Mr. Gedan, after he pumped his gas and complained there was a 5 cent difference in the price because Mr. Gedan used his credit card and that defendant Fulvio had told her to tell credit card customers that it would cost an "extra nickel”, or 5 cents *337 "extra”, to use a credit card. She further told Mr. Gedan and Ms. Miro (a witness who was present at the time of the incident) that night that there was a 5 cent difference between the cash price and the credit card price. Police Sergeant Collins stated, and the court found, that defendant Fulvio, at the incident, told him a customer must pay a higher price if using a credit card. Ms. Miro stated, and I find, that the cashier had informed her that she (the cashier) had told Mr. Gedan that there was a 5 cent per gallon additional charge for use of a credit card.
Defendant testified that he was a participant in Amoco’s cash discount program, that the signs in his station clearly stated the "cash price” and the "credit price” for his gasoline, that the price differential represented a discount for cash, that his employees were instructed to tell customers that the differential was a discount for cash and that he never instructed his employees to tell customers it would cost more for a credit card purchase. After hearing defendant’s testimony, and evaluating it together with the testimony and findings above stated, I find that defendant’s instructions to his employees as to what to tell customers concerning the station’s prices, were both, that is, in effect, the lower price was a discount for payment by cash but that the higher price would be charged to a customer who used a credit card, for the reason that the customer was paying by that means.
Upon the arrival of the police, Mr. Gedan told them he was willing to pay the cash price for his purchase but not the higher price; defendant told the police the higher price had already been registered in his machine as due and that was the price he insisted that Mr. Gedan pay. However, defendant was persuaded by the police to accept the lower, cash, payment, gave Mr. Gedan a receipt and the police left.
Later that evening Mr. Gedan arrived at the police station and swore out a complaint charging defendant with the two offenses which were the subject of this trial. The two policemen who had earlier responded to the scene thereupon, acting upon the complaint, returned to the gasoline station and arrested defendant.
General Business Law § 518 provides:
"§ 518. Credit card surcharge prohibited
"No seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means.
*338 "Any seller who violates the provisions of this section shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars or a term of imprisonment up to one year, or both.”
After long and careful deliberation on the issue of constitutionality presented here, the court feels compelled to conclude that the very distinction made by the People in this case, namely, that General Business Law § 518 "prohibits a vendor from charging a surcharge for credit card usage, but * * * would not interfere with that same vendor establishing the higher price for credit card sales and then allowing a comparable discount for cash purchases”, requires that this statute be invalidated on due process grounds, at least as applied in this case. The distinction made by the People is correctly based upon the legislative history of General Business Law § 518, as well as on the Federal statute which served as the model for General Business Law § 518 and that Federal statute’s legislative history.
In reaching its conclusion the court is deeply mindful of the principle that a strong presumption of constitutionality underlies legislative enactment (People v Pagnotta, 25 NY2d 333, 337 [1969]), and that in order to declare a law unconstitutional the invalidity of the law must be demonstrated beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 37, 40 [1965]). It is, however, also a fundamental tenet of our system of justice that penal laws are to be strictly construed and, particularly, that constitutional limitations on penal statutes are to be scrupulously adhered to not only in accordance with the provisions of the Constitution of the United States but also with the sometimes even stricter standards of the Constitution of the State of New York. (See, People v P. J. Video, 68 NY2d 296, 303, 308 [1986].)
It appears, from the facts developed in this case and the application of this statute based upon the pertinent legislative history and the position of the People as set forth above, that precisely the same conduct by an individual may be treated either as a criminal offense or as lawfully permissible behavior depending only upon the label the individual affixes to his economic behavior, without substantive difference.
Observe the instance in which a merchant sets $105 as his price for the sale of a suit, but sells it to a customer for $100 because the customer pays cash. The customer then tells a friend the price of his purchase and the friend, admiring the *339 suit, enters the merchant’s establishment to purchase the same with a credit card, having the customer’s $100 price in mind. Upon the second customer’s presentation of his credit card he is advised the price of the suit is $105. In the undoubtedly ensuing discussion, should the merchant advise the customer that the $100 price is available only as a discounted price for cash, he has engaged in legally permissible behavior. Should the merchant advise that the additional $5 is required because this customer is using a credit card for his purchase, the merchant would be subject to conviction for the offense charged in the instant case, namely, attempt to violate General Business Law § 518, or, indeed, violating that statute’s prohibition if the customer acceded to paying the $105.
Nor would the result necessarily be different if the $105 price was actually on a placard placed on the suit. Much was made at the trial of this case as to the matter of what signs were displayed at defendant’s gasoline station, when they were placed there, whether they clearly set forth "credit” prices and "cash” prices, and other factors relating to the contents, placement and timing of the sign displays. But it is clear that conviction may be had under the literal terms of General Business Law § 518 regardless of sign displays (although the signs may be relevant on the question of what the merchant in fact said where his words are in issue). Thus, however relevant the evidence as to sign placement and content may be on issues such as misrepresentation, fraud, consumer affairs, or other issues of what price differential is or is not projected to the public, it is not determinative on the issue here, namely, of why the differential was imposed, the crucial question on a charge of this offense.
The trap set for the unwary or unsophisticated, by the mode of application of the statute here involved, as specified by the People throughout the trial and in its posttrial memorandum, is grounded in the Federal legislation (the Cash Discount Act, amending the Truth in Lending Act) which provided the model for General Business Law § 518. The memorandum in support of Assembly Bill 10189 (S 836) of 1984 which enacted General Business Law § 518 notes that its purpose was to fill the gap created by the expiration of the Federal ban on surcharges on credit card users and that the provision permitting a merchant to offer a discount for cash would still be permitted. In the May 30, 1984 letter of the Assembly sponsor of the bill (Mr. Goldstein) to the Governor, recommending *340 approval of that legislation, Mr. Goldstein notes that the concepts in the bill were identical to those contained in the Federal Truth in Lending Act (15 USC § 1601 et seq.).
In the legislative history of the Federal counterpart of General Business Law § 518 it is pointed out that the
"bill permits merchants to have two-tier pricing systems and to offer a differential between the credit price and the cash price * * *
"Merchants can utilize two-tier pricing systems and thereby price cash purchases lower than credit purchases, if they choose to do so”. (S Rep No. 97-23, 97th Cong, at 3-4, reprinted in 1981 US Code Cong & Admin News, at 77.)
General Business Law § 518 would not have the deficiency described in this opinion if it simply prohibited the imposition of a surcharge upon a credit card user. But however laudatory the cash discount objectives of the framers of this legislation, the two-tier price system created and permitted here results in a mode of application of the statute so vague, uncertain and arbitrary of enforcement as to be fatally defective when the principles of the authorities discussed hereinafter are applied to that mode of application.
The People contend that "[tjhe statute in question is clearly drafted” and that the term "surcharge” is a commonly used and usually understood word. However, in Lanzetta v New Jersey (306 US 451, 458 [1939]), the court reversed the conviction below on the ground of vagueness, indefiniteness and uncertainty in violation of the Due Process Clause of the Fourteenth Amendment, despite the fact that the offending term used in the statute there involved was the commonly used and understood word "gangster”. On the issue of vagueness crucial here, the facts proved at trial and the two-tier pricing system raise the sometimes subtle but definite distinction between the occasion where the statute is unconstitutionally vague, on its face, because "no standard of conduct is specified at all” and that where it is unconstitutionally vague as applied, because "it requires a person to conform his conduct to an imprecise but comprehensible normative standard” (Coates v City of Cincinnati, 402 US 611, 614 [1971] [emphasis added]; and see, People v Velazquez, 77 Misc 2d 749, 760 [Crim Ct, NY County 1974]).
New York authorities adhere to the same principles. "A statute which fails to distinguish between innocent conduct and action which is calculated to cause harm may not be *341 sustained” (People v Pagnotta, 25 NY2d, supra, at 337; People v Diaz, 4 NY2d 469, 471 [1958]).
In People v Diaz (supra), the court struck down an ordinance making it a crime to "loiter” on the two grounds that the prohibitory language was too vague, indefinite and uncertain to define a crime as well as failing to provide any standards or criteria by which the prohibited conduct may be tested. The court reached its conclusion despite its finding that “While the term 'loiter’ or 'loitering’ has by long usage acquired a common and accepted meaning * * * it does not follow that by itself, and without more, such term is enough to inform a citizen of its criminal implications and, by the same token, leave it open to arbitrary enforcement. These fatal defects are best illustrated by the very facts of this case.” (4 NY2d, supra, at 470.) The same can be said for the term "surcharge” as used in General Business Law § 518. Indeed, if that word were substituted for the word "loiter” in Diaz, or the word "gangster” in Lanzetta (supra), taken together with the permissibility of the two-tier pricing system, "the very facts of this case” illustrate that a precise fit would occur and thus the same result must follow as in Diaz and Lanzetta, that is, the (impermissible) fact that precisely the same conduct may be labeled as lawful or unlawful on the basis of semantics only. (See also, People v Berck, 32 NY2d 567, 569-570 [1973]; People v Clark, 135 Misc 2d 22 [App Term, NY County]; People v Velazquez, 77 Misc 2d 749, 760, supra.)
In People v Velazquez (supra), the court also pointed to another crucial factor to be considered in the type of situation presented by the instant case, a factor which, indeed, transgresses the issues of vagueness and of selective enforcement (77 Misc 2d, supra, at 752): "Although the void-for-vagueness doctrine has traditionally been viewed as concerned principally with the problem of fair notice to the potential criminal actor, 'perhaps the most meaningful aspect of the vagueness doctrine is not actual notice but the other principal element of the doctrine — the requirement that a legislature establish minimal guidelines to govern law enforcement.’ (Smith v. Goguen, 415 U. S. 566, 574.) A vague statute violates due process by permitting and encouraging arbitrary and erratic arrests and convictions. It 'places virtually unfettered discretion in the hands of the police and thereby encourages arbitrary and discriminatory enforcement.’ (People v. Berck, 32 N Y 2d 567, 571.)”
The fatal deficiency in General Business Law § 518 and in *342 the People’s attempt to substantiate its validity is starkly illustrated by the testimony of crucial witnesses in this case. As above noted, defendant testified as to his instructions to his employees which, if understood and carried out by them as described by defendant, would have avoided a conflict with this statute since those instructions characterized the price differential involved as the legally permissible discount for cash rather than the legally impermissible additional, or "extra”, charge for use of a credit card. It was this court’s clear impression of the testimony of defendant’s cashier, Ms. Diaz, that she felt she was truthfully testifying as to her recollection of her employer’s instructions and that she believed she was assisting him with her testimony because the situation merely involved the customer (witness Gedan) insisting on paying cash for his purchase, and the cash discount simply did not apply when the customer used a credit card. And if Ms. Diaz had so testified, her testimony indeed would have supported her employer’s contention in this case. It was also the court’s clear impression of this witness and her testimony that she believed that her various explanations to the customer, as specified above, were equally interchangeable. But they were not. Her explanation that the price per gallon was 5 cents "extra” because of his use of a credit card amounted to conduct in violation of the statute. Her explanation that the "nickel less” applied only as a discount in a cash transaction was legally permissible behavior. Her further explanation that there was a 5 cent "difference” between the cash price and the credit price was a statement legally neutral, at worst, for this defendant, under this statute. Thus, whether this witness’ testimony accurately supported the case for the prosecution or for the defense clearly turned on the witness’ understanding, or lack of grasp, of the subtle semantic distinction involved in the People’s case as to what is lawful or unlawful under General Business Law § 518.
Similarly, the testimony heretofore noted by other witnesses —most particularly Mr. Gedan and Sergeant Collins, who testified as to the phraseology used by the defendant — would support either the prosecution or the defense, depending upon the subtle difference of phraseology used by the person speaking to the witness or, indeed, perhaps only the recollection by the witness of the nuance used by the speaker to the witness.
Indeed, the lack of clarity of the law here apparently ensnarled even those versed in the law. Witness the Special District Attorney’s argument in the instant case urging that *343 defense counsel’s statement, in the latter’s previously submitted "Memorandum of Fact and Law”, that a "credit card surcharge is a policy that has been used nationwide by all of the oil companies”, be considered by the court as an informal judicial admission by defendant (see, People v Rivera, 45 NY2d 989 [1978]). In support of this contention the prosecutor in his posttrial memorandum states "that misrepresents oil company practice * * * Cash discounts are allowed, credit card surcharges are impermissible. It was the credit card surcharge that defendant criminally attempted to impose”.
Indeed, if the People’s position in this regard were to prevail, defense counsel compounded that "admission” with similar others, stating in the aforesaid memorandum, that defendant’s service station "maintains a differential in surcharges with relation to credit cards” and that "the policy of a surcharge” does not violate General Business Law § 518. But those statements of counsel indirectly make the court’s very point as to the fatal defect in General Business Law § 518: if counsel learned in the law can confuse the two sides of the coin to which the People point here ("cash discounts are allowed, credit card surcharges are impermissible”), how much more so is the individual without legal training subject to criminal prosecution by reason of that ease of confusion, that lack of clarity of the requirements of the criminal offense here involved. How much more of a danger does it present to the ordinary individual businessman in his everyday affairs and to his often less sophisticated employees.
A penal statute will be struck down which "admit[s] of such a double meaning that a citizen may act upon one conception of its requirements and the courts upon another (People v. Brill, 255 App. Div. 452, 454; United States v. Capital Traction Co., 34 App. Cas. [D.C.] 592)”. (People v Dioguardi, 8 AD2d 426, 434 [1st Dept 1959], revd on other grounds 8 NY2d 260 [1960].)
It is true, of course, that some criminal offenses are distinguished from innocent behavior on the ground of the intent with which the individual acts.* That, however, is not the distinction which could save from conviction under this sec *344 tion the businessman who falls victim to the confusion engendered by, or the lack of clarity of, the requirements of General Business Law § 518. In the example of the sale of the suit, if the merchant involved fully intended that the $105 price be charged because of the use of the credit card (and even so acknowledged, in general terms for example, apart from the specific transaction involved) but in each specific transaction was careful to state and document the difference as a discount for cash, no violation of General Business Law § 518 would occur.
Thus, even with established intent to charge a credit cardholder more than others for his product, the merchant in the suit example would comply with the statute here involved simply, for example, by marking the suit with the figure of $105 as his "regular price” (15 USC § 1602 [x]) and also marking the suit with the $100 figure as his discount price for payment by cash. Under those circumstances the intended purpose of General Business Law § 518 is not achieved, indeed, its purpose is violated, yet the merchant does not violate General Business Law § 518 because at no time has he labeled his $105 price as a higher price by reason of payment by means of credit card.
On the other hand, the same merchant could fully intend that the $5 differential in the price of the suit be given as a cash discount, but if he or his employee carelessly phrases the matter to a credit cardholder, the merchant could be convicted of the crime described in General Business Law § 518.
Nor, as the People here contend, is the statute saved by the semantic gyration of claiming that it contemplates the establishment of a "regular price” for a product, that a "discount for cash” from that "regular price” is permitted and that it is only the "surcharge”, or additional charge, for use of a credit card, which is prohibited. The fact of the matter is that, at least for this product, there is at the "gas” pump, a legally permissible "cash price” and a legally permissible "credit price” — that fact is amply established by the position taken by the People and the evidence in this case, as well as by the authorities above cited. What is intolerable is that the gasoline station operator careful enough or sophisticated enough to always characterize the lower of these prices as a "discount for cash” may enter his automobile at the end of his business *345 day and drive home a free man; however, if the same individual, or his colleague operating the station down the street, or his employee is careless enough to describe the higher price in terms which amount to the "credit price” having been derived from adding a charge to the lower price, he faces the prospect of criminal conviction and possible imprisonment.
Thus, what General Business Law § 518 permits is a price differential, in that so long as that differential is characterized as a discount for payment by cash, it is legally permissible; what General Business Law § 518 prohibits is a price differential, in that so long as that differential is characterized as an additional charge for payment by use of a credit card, it is legally impermissible. In each case the innocent and the criminal conduct is based upon the same factual configuration. General Business Law § 518 creates a distinction without a difference; it is not the act which is outlawed, but the word given that act. The Bard had the phrase (of course) for the defendant’s best defense to the surcharge offense alleged here: "Oh, be some other name! What’s in a name? That which we call a rose/ By any other name would smell as sweet” (Shakespeare, Romeo and Juliet [2.2: 42-44]) or, in this case, as bad.
The motion to dismiss the charge of attempting to violate General Business Law § 518 is granted, the conviction thereon is set aside and dismissed and the defendant is discharged.

 The Special District Attorney’s faulty analogy of the situation here to a hypothetical case involving payments by a businessman to a public official being lawful in a certain instance but unlawful in another is clearly distinguishable on the basis of the differences of elements and facts in the two instances. Indeed, as the prosecutor points out, in his hypothetical case, "in most important respects the acts are identical” (emphasis added). In the instant case all of the acts are identical in the criminal instance and in the innocent instance; only the label is different.