OPINION OF THE COURT
B. Marc Mogil, J.
On January 18, 1986, at approximately 9:45 a.m., the defen *658 dant was arrested in the lower level waiting room of the Freeport railroad station and charged with criminally possessing a hypodermic instrument (Penal Law § 220.45) and loitering (Penal Law § 240.35 [7]).
The defendant was first seen by the arresting police officers laying on a bench located in the corner of the waiting room, apparently sleeping. The police officers took note that defendant was sleeping on the bench, but proceeded to check out the rest of the railroad station.
Approximately 15 minutes later, the police officers returned to the defendant and attempted to wake him up to determine why he was in the railroad station. The defendant awoke, stood up and stated that he had been sleeping there for about 2lA hours and that he was not taking the train.
As the defendant stood up, he put his hand in his sweatshirt pocket, prompting one of the police officers to ask defendant to remove his hand from his pocket. When the defendant did not respond, the police officer again asked defendant to remove his hand and the defendant said "No”. Once again the police officer asked defendant to remove his hand and defendant would not, stating that he had something he should not have in his pocket.
Fearing for his own safety and the safety of the people around him, the police officer grabbed defendant’s hand and reached into defendant’s pocket to find a hypodermic syringe. Upon finding the syringe, the defendant was placed under arrest.
The defendant has moved to dismiss the loitering charge on the grounds that the statute is unconstitutional on its face and as applied, and has moved to suppress the hypodermic syringe, alleging that it is the fruit of an illegal search.
Penal Law § 240.35 (7) provides that a person is guilty of loitering when he "[l]oiters or remains in any transportation facility, or is found sleeping therein, and is unable to give a satisfactory explanation of his presence.”
In proceeding to analyze the constitutionality of the above loitering statute, I am mindful that "[t]here is a strong presumption that a statute duly enacted by the Legislature is constitutional” (People v Pagnotta, 25 NY2d 333, 337 [1969]), and that in order to declare a law unconstitutional, the "invalidity [of the law must be demonstrated] beyond a reasonable doubt” (Matter of Van Berkel v Power, 16 NY2d 37, 40 [1965]).
*659 Due process, however, requires that a penal statute contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at its meaning (Winters v New York, 333 US 507 [1948]; Lanzetta v New Jersey, 306 US 451 [1939]; Connally v General Constr. Co., 269 US 385 [1926]). In fact, United States Supreme Court precedents have consistently established that in order to withstand constitutional scrutiny, a statute must give a " 'person of ordinary intelligence fair notice that his contemplated conduct is forbidden’ ” (Papachristou v City of Jacksonville, 405 US 156, 162; United States v Harriss, 347 US 612, 617) and must contain explicit standards for law enforcement officials so that the statute is not enforced in an arbitrary and discriminating manner (Grayned v City of Rockford, 408 US 104, 108-109).
In reviewing the leading appellate opinions deciding the constitutionality of various loitering statutes, the statutory scheme through which the loitering legislation is drafted presents two varieties or theories of the violation where appellate courts have found the vagueness of a proscription of loitering alone to be overcome.
The first classification of loitering statutes is that which prohibits loitering for a particular purpose, such as prostitution, or soliciting or engaging in sexual behavior of a deviate nature, or for the purpose of possessing or using a narcotic substance. These cases turn on a determination of whether the underlying conduct, the purpose of which one is prohibited from loitering, is adequately and effectively defined.
In People v Pagnotta (25 NY2d 333, supra [1969]), the Court of Appeals found a statute prohibiting loitering for the purpose of unlawfully using or possessing controlled substances not to be defined in terms so vague that it must be declared unconstitutional. Similarly, in People v Smith (44 NY2d 613 [1978]), the court sustained a statute prohibiting loitering for the purpose of prostitution.
However, the court has invalidated a statute finding one guilty of loitering when he loiters "under circumstances which justify suspicion that he may be engaged or about to engage in crime” (Penal Law § 240.35 [former (6)]) on the basis that the statute failed to delineate any identifiable act proscribed (People v Berck, 32 NY2d 567 [1973]) and has invalidated a statute prohibiting loitering for the purpose of deviate sexual behavior on the ground that the object of the statute was to punish conduct anticipatory to the act of consensual sodomy, *660 the prohibition of which had previously been invalidated (People v Uplinger, 58 NY2d 936 [1983]).
The second classification of loitering statutes are those which seek to prohibit loitering at a specific place of restricted public access such as school facilities, waterfront facilities, or as in the case at hand, transportation facilities. Pursuant to this analysis, the Court of Appeals in People v Johnson (6 NY2d 549 [1959]) determined that a prohibition against loitering on school grounds satisfied the Due Process Clause of the State and Federal Constitutions. Similarly, in People v Merolla (9 NY2d 62, 66 [1961]), the court held that an ordinance which prohibited loitering, " 'without a satisfactory explanation’ ” within 500 feet of the Port of New York was not unconstitutional.
However, the court has invalidated a statute prohibiting loitering "about any street or street corner in the City of Dunkirk.” (People v Diaz, 4 NY2d 469, 470 [1958].)
In 1953, the Court of Appeals upheld an ordinance similar to the subject statute as not void for indefiniteness (People v Bell, 306 NY 110 [1953]), and this case has been cited with approval via string citations in many recent cases (see, People v Smith, supra, at 620; People v Berck, supra, at 570), however, the references to Bell have been made to support the principle that simple loitering statutes will be sustained in places of restricted public access without reexamining the specific application at issue, i.e., whether a given railroad station or transportation facility is a place of such restricted public access as to render constitutionally permissible the enforcement, on those premises, of the statute in question.
The Appellate Term of the New York Státe Supreme Court did just that in a recent decision which declared the instant statute unconstitutional (People v Clark, 135 Misc 2d 22 [1987]). In considering the problem, the court could not ignore that today a reference to a "station” or to a "transportation facility” will often have a more expansive meaning than might have been the case in 1953, when Bell (supra) was decided.
Today, many transportation facilities have a multitude of dimensions and purposes. Regarding the Port Authority bus terminal, the facility at issue in Clark (supra), the Second Circuit has observed: "[T]he character and function of the Terminal, makes clear that it is a thoroughfare used by thousands of people each day. It is one of the busiest passage *661 ways in the country, with persons hurrying to and from subways, buses, shops, theaters, and other streets. In design and physical appearance, the main concourse resembles a street” (Wolin v Port of N. Y. Auth., 392 F2d 83, 89). A lower court which held the instant statute unconstitutional observed that the "Port Authority Bus Terminal is more akin to the streets of Diaz than either the school in Johnson or the waterfront pier in Merolla” (People v Velazquez, 77 Misc 2d 749, 759 [1974]).
Many transportation facilities are still deemed places of "restricted public access,” yet the change in character of many of those facilities over the past 30 years requires a sliding scale scrutiny to examine the public character thereof.
In the instant case, the public nature of the Freeport railroad station is not like that of the Port Authority bus terminal. It does not resemble a street capable of holding many thousands of people at any given point in time. The Freeport railroad station is dwarfed when compared to the Port Authority bus terminal’s vast hallways. It has but a few small waiting rooms available for persons awaiting their train or bus.
The present loitering statute helps to keep those waiting rooms safe for public use. In People v Bell (306 NY 110, supra), the Court of Appeals found that the statute was reasonably related to the welfare of the public-at-large.
The court stated (supra, at 113): "The legislative intent in this instance appears to have been to prevent persons from infesting subway, elevated or other railway stations who have no occasion to be there. The danger to the public is well understood which arises from the congregation of nondescript characters at such locations, particularly at night, where degenerates, or even 'boisterous, noisy cut-ups,’ * * * may * * * become anything from a public nuisance to a serious menace.”
Furthermore, in Bell (supra), the court for the first time examined a statute containing a "satisfactory explanation” clause. Therein, the court instituted the analysis, later cited with approval in People v Merolla (9 NY2d 62, supra), that the provision does nothing more than serve to restrict the application of the statute to the advantage of the accused, while imposing a procedural condition on the police rather than adding a substantive element to the offense.
The only reported decisions concerning the instant statutes *662 revealed by the court’s research are the Port Authority bus terminal cases of People v Velazquez (77 Misc 2d 749, supra) and People v Clark (135 Misc 2d 22, supra), and the 1983 New York City Criminal Court matter, People v Guilbert (122 Misc 2d 694). Velazquez and Clark both held that Penal Law § 240.35 (7) was unconstitutional on the grounds of excessive vagueness and also because the "satisfactory account” provision violated due process since "it 'requires those of whom it is demanded to choose between a possible loitering prosecution predicated on their silence and possible self incrimination predicated on what statement they make.’ (People v. Berck, supra, p. 574.)” (People v Velazquez, supra, at 757; People v Clark, supra.)
However, this court’s research reveals that the opinions of Velazquez and Clark (supra) have rarely been cited nor has any appellate court considered their holdings. Therefore, while Velazquez and Clark are persuasive, they are not binding authority with regard to the constitutional issue presented herein.
This court tends to align itself more with the court’s opinion in People v Guilbert (supra). The court in Guilbert (supra, at 700) found it significant that in People v Berck (32 NY2d 567, supra) the Court of Appeals cited the Bell, Johnson and Merolla cases (supra) with approval for the proposition that "statutes which prohibit loitering at a specific location were sustainable because the prohibited behavior was properly restricted to specific facilities where the likelihood of illegal activity was notorious.”
The court must consider the realities of our society and the broad implications of its ruling. Within the geographical jurisdiction of this county are many railroad and enclosed bus stations and terminals. There is indeed a reasonable relationship between the welfare of the public-at-large, and the concern and efforts of the Legislature to insure the safety of the many patrons who utilize transportation facilities which all too often serve as the setting of society’s most violent crimes.
Therefore, although the Legislature did not draft this statute in a manner worthy of high praise for their eloquent craftsmanship, and although its "satisfactory explanation” provision does raise constitutional uncertainty, the court is constrained to reject the Velazquez (supra) and Clark (supra) holdings and conclude, in line with the Guilbert (supra) holding, that the defendant has failed to discharge its burden of *663 proving the statute’s constitutional invalidity beyond a reasonable doubt. Accordingly, the defendant’s motion to dismiss the loitering charge is denied.
The second branch of defendant’s motion involves the suppression of the hypodermic syringe. Defendant alleges that the syringe was procured through an illegal search of the defendant.
First, defendant suggests that he was searched as a result of his arrest under the loitering statute, and since that statute is unconstitutional, anything procured from that search should be suppressed.
The constitutionality of the loitering statute does not pertain to defendant’s motion to suppress. Defendant was searched prior to his arrest for loitering and the loitering charge seems to have been jm afterthought of the police officers once they discovered that the defendant possessed the hypodermic syringe.
Secondly, defendant claims that the loitering statute (Penal Law § 240.35 [7]) furnishes a pretext for the arrest interrogation and search of the suspects when no other basis exists for doing so. Once again, the defendant was searched prior to his arrest and, apparently, there was no arrest interrogation. The police officers requested certain information from the defendant, but they did so prior to his arrest for loitering.
A police officer may approach a private citizen on the street (or in a railroad station) for the purpose of requesting information, and the basis of the inquiry need not rest on any indication of criminal activity on the part of the person of whom the inquiry is made. (People v De Bour, 40 NY2d 210 [1976].) For instance, no one would quarrel with a police officer’s right to make inquiry of passersby to find the parents of a lost child, and courts have consistently recognized the obligation of policemen to render assistance to those in distress (e.g., People v Mitchell, 39 NY2d 173, and authorities cited therein).
Thirdly, defendant claims the police officer had no probable cause to search him, while the People claim he was searched for weapons for the protection of the police officers and the people nearby.
A search for weapons in the absence of probable cause to arrest must be strictly circumscribed by exigencies which justify its initiation and must be limited to that which is necessary for discovery of weapons which might be used to *664 harm the officers or others nearby. (Warden v Hayden, 387 US 294, 310 [1967]; Terry v Ohio, 392 US 1 [1968].)
Although Officer Murphy testified that defendant’s motions placed him in fear that he possibly had a gun secreted on his person, the test to be applied is an objective one (see, People v Cantor, 36 NY2d 106 [1975]; see also, People v Johnson, 56 AD2d 766 [1977]). A limited search for weapons is authorized where a police officer rr 'reasonably suspects that he is in danger of physical injury’ ” (People v Benjamin, 71 AD2d 857 [1979]).
This court finds that the circumstances, in the context of where they took place, would cause a reasonable man to suspect that he, or those around him, is in danger of physical injury.
The police officer asked the defendant repeatedly to remove his hand from his sweatshirt pocket. The defendant continually defied the police officer’s requests and chose to keep his hand in his pocket stating, "I have something I’m not supposed to have in my pocket.” At this point, in the context of the Freeport railroad station which has a high incidence of crime, the police officer, who said he was in fear for his safety, pulled defendant’s hand out of his pocket and reached into his pocket, discovering the syringe. As far as the police officer knew, that syringe could have been a weapon, and it was reasonable to suspect that defendant was concealing a weapon.
For these reasons, defendant’s motion to suppress is denied and this court holds that the search was a legal search limited to that which was necessary for discovery of weapons which might be used to harm the officers or others nearby.