Audrey Samers Formal Opinion Deputy Superintendent No. 2006-F2 General Counsel New York State Insurance Department 25 Beaver Street New York, NY 10004
Dear Ms. Samers:
You have asked whether General Business Law § 518, which prohibits a "seller in any sales transaction" from imposing a surcharge for the use of a credit card in lieu of another payment method, applies to service fees charged to insureds who elect to pay insurance premiums by credit card. Your question focuses on whether the payment of premiums for a contract of insurance is a "sales transaction" within the meaning of the statute.[1]
We conclude that such payments are "sales transactions," and thus that fees imposed for the payment of insurance premiums by credit card are prohibited credit card surcharges within the meaning of General Business Law § 518.
BACKGROUND
Insurers and insurance brokers have inquired of your Department whether they are permitted to charge a service fee to insureds who use a credit card to pay for insurance premiums. They seek to use the service fee to recover from the insureds credit card transactions fees imposed by credit card issuers. The Insurance Department has in the past opined that General Business Law § 518
prohibits the imposition of such service fees upon insureds. You ask whether the Department's interpretation of this provision is correct.
ANALYSIS
The imposition of surcharges upon credit card holders for the use of a credit card in lieu of other methods of payment is prohibited by General Business Law § 518, which provides in full:
 No seller in any sales transaction may impose a surcharge on a holder[2] who elects to use a credit card in lieu of payment by cash, check, or similar means.
 Any seller who violates the provisions of this section shall be guilty of a misdemeanor punishable by a fine not to exceed five hundred dollars or a term of imprisonment up to one year, or both.
The issue presented here is whether a fee imposed by an insurer, insurance broker or similar entity upon an insured who uses a credit card to pay insurance premiums falls within the statutory prohibition. Insurance premiums are the consideration paid for coverage under an insurance policy. See N.Y. Jur. 2d, Insurance § 902 (1988); cf. Insurance Law § 9101 (defining "premium" for purpose of article governing fees and taxes). The question is therefore whether the purchase of insurance is a "sales transaction" within the meaning of General Business Law § 518.
The term "sales transaction" is not defined in the statute, and there are no reported decisions that address the types of transactions that fall within the ambit of the statute.[3]
Because section 518 prohibits the use of a credit card surcharge in "any sales transaction," the language of the statute indicates that it was intended to apply broadly. See General Business Law § 518 (emphasis added). Additionally, for purposes of Article 29-A of the General Business Law, within which section 518 falls, the term "seller" is defined as "any person who honors credit cards or debit cards which may be used to purchase or lease property or services." General Business Law § 511(6). Thus, as long as the sale of insurance can be considered the sale of property or a service, it appears to fall within the plain meaning of the statute. We believe that the purchase of insurance coverage can be considered the purchase of property or a service, and thus that credit card surcharges imposed in connection with the payment of insurance premiums fall within the intended scope of the statute.
Nothing in General Business Law § 518 or its legislative history indicates that the Legislature intended to limit the statute's application to only certain types of sales transactions or to give the terms "property" and "service" narrow or restrictive meanings. Moreover, an insurance contract has generally been considered a "service" or "property interest," as those terms are used in other state consumer protection laws.See, e.g., Stevens v. Motorists Mut. Ins. Co.,759 S.W.2d 819, 820 (Ky. 1988); Pekular v. Eich, 513 A.2d 427, 433
(Pa.Super.Ct. 1986); Fox v. Indus. Cas. Ins. Co., 424 N.E.2d 839,842 (Ill.App.Ct. 1981). See generally Brian J. Redmond,Coverage of Insurance Transactions Under State ConsumerProtection Statutes, 77 A.L.R.4th 991, § 4a (1990). It is also well-accepted that New York's general consumer frauds statute, General Business Law § 349, which prohibits deceptive practices in "the conduct of any business, trade or commerce or in the furnishing of any service," applies to transactions involving the sale and marketing of insurance. See, e.g., Riordan v.Nationwide Mut. Fire Ins. Co., 977 F.2d 47 (2d Cir. 1992);Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344
(1999); Uibell Anesthesia, P.C. v. Guardian Life Ins. Co. ofAm., 239 A.D.2d 248 (1st Dep't 1997). Our conclusion that the sale of insurance should be considered the sale of property or a service within the scope of General Business Law § 518 is thus consistent with the inclusion of insurance transactions under other broadly-worded consumer protection laws.
Analysis of a related federal statute further supports this construction of section 518. The state prohibition on credit card surcharges was enacted in 1984 to replace a federal ban on surcharges that had recently expired. See, e.g., Sponsor's Memorandum, reprinted in Bill Jacket to ch. 160 (1984), at 5. The prohibition under state law follows the wording of the former federal statute exactly. See Act of Feb. 27, 1976, Pub.L. No. 94-222, 90 Stat. 197 (1976) (codified at former15 U.S.C. § 1666f(a)(2)). Thus, the scope of the pre-existing federal statute is probative as to the intended scope of the New York law that replaced it.
Nothing in the legislative history of the federal statute indicates that Congress intended to limit the types of sales transactions covered under that statute, the Truth in Lending Act ("TILA"). Moreover, although we were not able to locate any decisions construing the scope of the federal surcharge ban, cases involving another section of TILA are instructive. Specifically, a section of TILA that requires certain disclosures in "credit sales" has been applied to the sale of insurance.See Stefanski v. Mainway Budget Plan, Inc., 456 F.2d 211, 212
(5th Cir. 1972); King v. Central Bank, 558 P.2d 857, 861
(Ca. 1977). Applying the principles of statutory construction that the same words used in different parts of an act are presumed to have the same meaning, and that statutes in parimateria (statutes that relate to the same subject) generally are to be construed similarly, these cases indicate that the sale of insurance would likely have been included within the term "sales transaction" in the former federal credit card surcharge ban. This further supports our view that General Business Law § 518, because it is based upon the federal surcharge statute, should likewise be interpreted as including the sale of insurance within its scope.
CONCLUSION
Because General Business Law § 518 is broadly worded to prohibit credit card surcharges in "any sales transaction" which involves the purchase of "property or services," and nothing in the legislative history to this provision indicates that a narrow scope of the statute was intended, there does not appear to be any basis for excluding the purchase of insurance from the scope of this statute. Therefore, we conclude that the ban on credit card surcharges in General Business Law § 518 prohibits the imposition of a surcharge on an insured who uses a credit card to pay insurance premiums.
Very truly yours,
ELIOT SPITZER Attorney General
[1] Your question focuses solely on the applicability of General Business Law § 518, and we therefore do not address whether such fees are subject to regulation under the Insurance Law or other applicable statutes or regulations.
[2] "Holder" is defined as a person to whom a credit card is issued or who has agreed to pay obligations arising from the use of a card issued to another person. General Business Law § 511(4).
[3] There are only three reported cases involving General Business Law § 518, all of which are trial court decisions. We note that the issue of whether the statute is unconstitutionally vague insofar as it prohibits a credit card surcharge but not a discount for the payment of cash, an issue not raised by your request, is addressed in the two reported decisions involving a criminal prosecution under this statute. See People v.Fulvio, 136 Misc.2d 334 (N.Y.C. Crim. Ct., Bronx Co. 1987) (granting motion to set aside verdict finding defendant guilty of attempt to violate General Business Law § 518 on ground statute is unconstitutionally vague as applied where defendant raised defense that he offered a permitted cash discount); People v.Fulvio, 135 Misc.2d 93 (N.Y.C. Crim. Ct., Bronx Co. 1987) (holding that statute is not unconstitutionally vague on its face and denying motion to dismiss charges on this ground). We are not aware of any decisions addressing the vagueness issue with respect to the former comparable federal statute or comparable statutes enacted by other states.